[Cite as *In re J.M.D.*, 2014-Ohio-1609.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
WASHINGTON COUNTY

| | | |
|---|---|---|
| IN THE MATTER OF: | : | Case No. 14CA2 |
| J.M.D. | : | DECISION AND JUDGMENT ENTRY |
| | : | |
| | | RELEASED:  4/9/14 |

_____
APPEARANCES:

Chandra L. Ontko, Cambridge, Ohio, for appellant.

James E. Schneider, Washington County Prosecuting Attorney, and Amy Graham, Washington County Assistant Prosecuting Attorney, Marietta, Ohio, for appellee.
_____
Harsha, J.

{¶1}    After L.D. was convicted of sexual abuse of the minor daughter of her live-in boyfriend, the Washington County Children Services ("WCCS"), sought permanent custody of J.M.D., who is L.D.'s minor daughter.  When the Washington County juvenile court granted WCCS's motion for permanent custody, L.D. filed this appeal claiming that the judgment was against the manifest weight of the evidence.

{¶2}    L.D. contends that the children services agency failed to prove by clear and convincing evidence that it was in the best interest of J.M.D. to award permanent custody to the agency.  L.D. claims J.M.D. still has a relationship with her and J.M.D.'s extended family.  She points to the fact that during J.M.D.'s only visit after L.D.'s incarceration, J.M.D. indicated she was happy to see her mother; she also notes the child had visitation with her older sister and maternal grandparents.  L.D.'s contention is meritless because WCCS presented clear and convincing evidence that the award of permanent custody to the agency was in J.M.D.'s best interest including: 1) L.D. had

been found guilty of sexual abuse of another child while her natural daughter was present; 2) the abused child overheard L.D. and her boyfriend indicating that J.M.D. would also be subject to sexual abuse; 3) J.M.D. was thriving in her new foster home; and 4) she had bonded with her foster parents, who indicated willingness to adopt her.

{¶3} L.D. next contends that WCCS failed to prove that it was not possible to place J.M.D. back with her within a reasonable time, as required by R.C. 2151.414(B)(2). We reject L.D.'s contention because this provision is applicable only if the children services agency files a permanent custody motion under R.C. 2151.413(D)(2). Here, WCCS filed its motion pursuant to R.C. 2151.413(A).

{¶4} Therefore, we overrule her assignment of error and affirm the judgment awarding permanent custody of the child to WCCS.

## I. FACTS

{¶5} In April 2003, L.D. gave birth to J.M.D., whose biological father is unknown. In late March 2012, the police arrested L.D. and her live-in boyfriend, D.H., on charges that they had sexually abused D.H.'s 15-year old daughter, K.H., in their trailer. L.D. and D.H. had sexually abused K.H. as part of their version of the Wiccan religion, which promoted sexual abuse of children by their parents. K.H. disclosed her sexual abuse after she overheard L.D. and D.H. talking about incorporating J.M.D. and her older sister S.D. into their sexual activity as part of the religion.

{¶6} At that time, J.M.D. was eight years old and her sister, S.D., was ten years old. The boyfriend's daughter, K.H., had been a regular visitor to their home and had viewed L.D. as a mother figure. A WCCS counselor later discovered that J.M.D. was present and witnessed her mother, L.D., and her mother's boyfriend, D.H., sexually

abusing K.H.   L.D. had a prior conviction from a few years earlier for child endangerment that apparently involved J.M.D.

{¶7}    At the time of the mother's arrest, the trailer was in a deplorable condition with debris, unwashed dishes and clothes, and a horrible smell throughout, maggots in the refrigerator, roaches, ants, and animals inside, and a padlock that created a fire hazard because the children didn't have access to the keys.  According to an agency caseworker, it was one of the worst homes she had ever been in.  L.D. agreed to a safety plan in which she let J.M.D. stay with L.D.'s parents until the plan could be implemented.  The grandparents have custody of L.D.'s other daughter, S.D.

{¶8}    Less than a month later, the grandparents requested that WCCS remove J.M.D. because they could not take care of her or keep her safe because of her behavior.  During this period, J.M.D. was immature, difficult to understand, and scared. She acted like a caged animal, screaming and throwing tantrums, and she attacked her sister, S.D., and her grandparents.  After the trial court awarded WCCS emergency temporary custody of J.M.D., the agency filed a complaint that alleged J.M.D. was an abused, neglected, and dependent child.

{¶9}    Following an adjudicatory hearing, L.D. admitted that J.M.D. is a dependent child, and the trial court ordered that J.M.D. remain in the temporary custody of WCCS.  After she pleaded guilty to the sexual battery involving her boyfriend's 15-year old daughter, K.H., the Washington County Common Pleas Court sentenced L.D. to a prison term of two years for the third degree felony.  L.D.'s anticipated release date was in March 2014.  In late July 2012, pursuant to an agreed dispositional order in the child-dependency case, the trial court ordered that J.M.D. continue to be placed in the

temporary custody of WCCS.  The trial court permitted L.D. and J.M.D. to have supervised visitation for 30 minutes before L.D.'s sentencing hearing, authorized visitation with the maternal grandparents, and permitted the mother and child to exchange letters as long as they were first reviewed by a caseworker.

{¶10}  The brief supervised visitation on the day of L.D.'s sentencing resulted in the mother and child crying, but J.M.D. remarked afterwards that she was happy she had seen her mom.  L.D. wrote the child several letters while incarcerated, but J.M.D. rarely took an interest in responding to them.  The caseworkers prevented the child from reading those letters or parts of letters from her mother that they felt filled her with false hopes, like ones in which L.D. promised J.M.D. that when she was released, they would all be together living at the maternal grandparents' home.

{¶11}  The maternal grandparents did not express an interest in having custody of J.M.D.; instead they advised agency personnel that they could not keep the child safe, that their house often had random guests, including two sex offenders, and that J.M.D. was in a better place with foster parents.  The maternal grandparents frequently did not show up for visitation with the child.

{¶12}  WCCS filed a motion, seeking permanent custody of J.M.D. for the purpose of adoption.  The agency's motions were filed pursuant to R.C. 2151.413(A) and 2151.414.  At the permanent custody hearing, the court admitted a deposition from L.D., who was still incarcerated.

{¶13}  The evidence admitted at the hearing established that the child is thriving in her foster home, which provides a structured environment for her, that her grades and behavior are improving, and that the child wants to stay with her foster parents forever.

The court-appointed guardian for J.M.D. testified that awarding permanent custody of the child to the agency for purposes of placing her with the foster parents for adoption was in the child's best interests.

**{¶14}** Similarly, the agency counselor testified that when she began counseling J.M.D. after the award of temporary custody, the child had destructive adjustment disorders. J.M.D. also exhibited cat-like behaviors because in her mother's home, cats were worshipped. After six months of therapy, J.M.D. could only recall two events that occurred when she lived with her mother—one involving J.M.D. and her mother naming three kittens that L.D. brought home and the other involving J.M.D. and her sister, S.D., trying to cook macaroni and cheese when L.D. was too sick or tired to cook. Although the child had improved in foster care, the counselor believed the trauma associated with J.M.D. witnessing her mother, L.D., and her mother's boyfriend, D.H., sexually abusing D.H.'s daughter would likely continue for a long time. Because of the sexual abuse that the mother engaged in, the counselor had strong concerns about reunification of the child with the mother; she believed that J.M.D. was in need of a secure, legally permanent adoptive placement and that it was in the child's best interest to award permanent custody to WCCS to facilitate an adoption.

**{¶15}** In January 2014, the trial court awarded WCCS permanent custody of the child. The court found by clear and convincing evidence that J.M.D. was abandoned under R.C. 2151.414(B)(1)(b) and that J.M.D. had been in the temporary custody of WCCS for more than the specified 12 months of a consecutive 22-month period under R.C. 2151.414(B)(1)(d). The trial court further found by clear and convincing evidence

that it was in the best interest of the child that she be placed in the permanent custody

of WCCS.

## II.  ASSIGNMENT OF ERROR

**{¶16}** L.D. assigns the following error for our review:

THE JUDGMENT OF THE TRIAL COURT WAS AGAINST THE
MANIFEST WEIGHT OF THE EVIDENCE IN THAT WASHINGTON
COUNTY CHILDREN SERVICES BOARD FAILED TO SHOW BY CLEAR
AND CONVINCING EVIDENCE THAT THE APPELLANT'S PARENTAL
RIGHTS SHOULD BE TERMINATED.

## III.  STANDARD OF REVIEW

**{¶17}**  "A reviewing court generally will not disturb a trial court's permanent

custody decision unless the decision is against the manifest weight of the evidence."

*See generally In the Matter of J.V.-M.P.*, 4th Dist. Washington No. 13CA37, 2014-Ohio-

486, ¶ 11, citing *In re M.H.*, 4th Dist. Vinton No. 11CA683, 2011-Ohio-5140, ¶ 29, and *In

re. A.S.*, 4th Dist. Athens Nos. 10CA16, 10CA17, and 10CA18, 2010-Ohio-4873, ¶ 7.

To determine whether a permanent custody order is against the manifest weight of the

evidence, an appellate court must weigh the evidence and all reasonable inferences,

consider the credibility of the witnesses, and determine whether in resolving evidentiary

conflicts, the trial court clearly lost its way and created such a manifest miscarriage of

justice that the judgment must be reversed and a new trial ordered.  *J.V.-M.P.* at ¶ 12,

citing *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 20.

In reviewing the evidence under this standard, we must defer to the trial court's

credibility determinations because of the presumption in favor of the finder of fact.  *In re

P.A.R.*, 4th Dist. Scioto No. 13CA3550, 2014-Ohio-802, ¶ 16, citing *Eastley* at ¶ 21.

**{¶18}** In a permanent custody case, the dispositive issue on appeal is "whether the juvenile court's findings * * * were supported by clear and convincing evidence." *In re K.H.*, 119 Ohio St.3d 538, 2008-Ohio-4825, 895 N.E.2d 809, ¶ 43; *see also* R.C. 2151.414(B)(1). "Clear and convincing evidence" is "that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St.469, 120 N.E.2d 118 (1954), paragraph three of the syllabus; *State ex rel. Miller v. Ohio State Hwy. Patrol*, 136 Ohio St.3d 350, 2013-Ohio-3720, 995 N.E.2d 1175, ¶ 14. "[I]f the children services agency presented competent and credible evidence upon which the trier of fact reasonably could have formed a firm belief that permanent custody is warranted, then the court's decision is not against the manifest weight of the evidence." *In re R.M.*, 2013-Ohio-3588, 997 N.E.2d 169, ¶ 55 (4th Dist).

IV.  LAW AND ANALYSIS

Permanent Custody Order

**{¶19}** In her sole assignment of error, the mother asserts that the trial court's award of permanent custody of her daughter, to WCCS was against the manifest weight of the evidence.

**{¶20}** Parents have a fundamental liberty interest in the care, custody, and control of their children. *Troxel v. Granville*, 530 U.S. 57, 65-66, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000). There is also "an essential and basic civil right to conceive and raise children." *K.H.* at ¶ 39. But it is equally true that the fundamental interest of parents is

not absolute.  A court may terminate the parental right to custody when it is in the children's best interest and specific requirements are met.  *In re D.A.*, 113 Ohio St.3d 88, 2007-Ohio-1105, 862 N.E.2d 829, ¶ 11; *In re Cunningham*, 59 Ohio St.2d 100, 105, 391 N.E.2d 1034 (1979).

{¶21}  R.C. 2151.414 governs the procedure for awarding permanent custody of a child to a public children services agency or private child placing agency.  *See* R.C. 2151.413.  Before a trial court may award a children services agency permanent custody, it must find by clear and convincing evidence that (1) one of the circumstances in R.C. 2151.414(B)(1) applies, and (2) awarding the children services agency permanent custody would further the child's best interests.

{¶22}  In this appeal, the mother does not contest the trial court's findings that R.C. 2151.414(B)(1)(b) and (d) applied because the child was abandoned when her mother was incarcerated and the child had been in the temporary custody of WCCS for more than 12 months of a consecutive 22-month period after the child had been removed from the home.  Instead, the mother first contends that the trial court erred in granting permanent custody because WCCS failed to show by clear and convincing evidence that it was in the best interest of the child to award permanent custody of J.M.D. to the agency.

{¶23}  R.C. 2151.414(D)(1), which governs the best interest determination, provides:

> In determining the best interest of a child at a hearing held pursuant to division (A) of this section * * *, the court shall consider all relevant factors, including, but not limited to, the following:
>
> (a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers,

and any other person who may significantly affect the child;

(b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

(c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state;

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

***

**{¶24}** R.C. 2151.414(E)(7) and(10) factors are:

(7) The parent has been convicted of or pleaded guilty to one of the following:

* * *

(d) An offense under section 2907.02, 2907.03, 2907.04, 2907.05, or 2907.06 of the Revised Code or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to an offense described in those sections and the victim of the offense is the child, a sibling of the child, or another child who lived in the parent's household at the time of the offense;

* * *

(10) The parent has abandoned the child.

**{¶25}** The trial court determined that R.C. 2151.414(D)(1)(a), (c), (d), and (e) and R.C. 2151.414(E)(7)(d) and (10) were particularly applicable:

After considering all relevant evidence and factors, including those set [forth] in [R.C.] 2151.414(D)(1)(a), (c), (d), and (e), the Court finds by clear and convincing evidence that it is in the best interest of the child to be placed in the permanent custody of the movant.

At the time of the filing of the amended motion for permanent custody, the child had been out of the mother's home for seventeen (17) months in accordance with statute and nineteen (19) months actual time. As of the hearing on permanent custody she had been out of the home for a total of 23 actual months and 21 months in accordance with the statute.

The court finds that all of the child's needs are being met by her foster family and she is doing well in their home. The child deserves a safe, loving, nurturing environment where she will not be subjected to abuse. She needs a secure permanent placement. The mother cannot provide this. Both the mother and her boyfriend were convicted of sex offenses involving the mother's boyfriend's daughter and are presently incarcerated. The mother was convicted of one count of sexual battery in violation of R.C. 2907.03(A)(5). The abuse occurred in the mother's home and the child herein witnessed it. The mother has not seen the child since her incarceration in prison 14 months ago. Permanency and stability can not be achieved without a grant of permanent custody. The foster family who has had the child for 13 months is willing to adopt the child. No relative placement options exist for the child. No one has filed for custody. The child told the Guardian Ad Litem that she wants to live with the foster parents forever. The child's Guardian Ad Litem supports the motion for permanency and believes the motion for permanent custody should be granted. The Court agrees.

{¶26} The mother does not dispute the trial court's findings concerning the applicability of R.C. 2151.414(D)(1)(a), (c), (d), and (e) and R.C. 2151.414(E)(7)(d) and (10) in its best interest determination. Although it is not entirely clear, she instead appears to claim that in assessing R.C. 2151.414(D)(1)(a) the trial court did not accord proper weight to the fact that J.M.D. had been permitted to see her older sister, S.D., and her maternal grandparents, and that J.M.D. expressed happiness to see her mother during her brief visit at the mother's sentencing hearing in the sexual battery case. L.D.

argues that "[t]his indicates the child certainly still has a relationship and can interact with her sibling, her grandparents, and her mother."

**{¶27}** The trial court was justified in not according more weight to this evidence. The grandparents notified WCCS that they could not take care of J.M.D. or provide for her safety in their home, which at times housed sex offenders. They did not request custody of the child and they did not even regularly visit her when they had the opportunity. One of the grandparents admitted that the child was better off in the agency's custody and in foster care. J.M.D.'s counselor testified that the sexual abuse of the ex-boyfriend's minor daughter had traumatized J.M.D. and gave the counselor a strong belief that a reunification with her mother could not provide a secure, legally permanent placement for the child. J.M.D. herself indicated that she wanted to live with her foster parents forever, and she is now thriving in the care of the foster parents.

**{¶28}** Moreover, the undisputed evidence indicates: 1) the conditions in the trailer where L.D. and J.M.D. lived were abhorrent; 2) in J.M.D.'s presence, L.D. sexually abused another minor female, who considered L.D. to be a "mother-figure"; 3) L.D. and her boyfriend planned to include J.M.D. and her sister in their sexually oriented religious beliefs; 4) and after being removed from her former environment, J.M.D. has shown measurable progress in her behavior and happiness.

**{¶29}** WCCS presented competent and credible evidence upon which the trial court reasonably formed a firm belief that the best interest of J.M.D. warranted the award of permanent custody to the agency for potential adoptive placement with her foster parents.

{¶30}  The mother also argues that under R.C. 2151.414(B)(2) the trial court was required to consider whether the child could be placed with her within a reasonable time.  She claims that her deposition testimony indicated that by completing various programs while incarcerated, including a parenting program, she "was making an attempt to better herself while incarcerated" and that her numerous letters to the child indicated that she "should have been given a reasonable time within which to have her daughter returned to her."

{¶31}  In *J.V.-M.P.,* 4th Dist. Washington No. 13CA37, 2014-Ohio-486, we recently rejected a similar argument in another permanent custody case involving WCCS.  As in that case, because WCCS filed its amended motion for permanent custody pursuant to R.C. 2151.413(A) here, "the court was not required to enter a finding under R.C. 2151.414(B)(2) that the child could not or should not be returned to either parent within a reasonable time."  *Id.* at ¶ 25.

{¶32}  Moreover, even if R.C. 2151.414(B)(2) applied, "[s]imply because appellant claims she has attempted to 'better herself while incarcerated' does not mean that the trial court was required to afford appellant a reasonable time to prove that she would be able to properly care for the child.  As we have recognized time and again, a trial court is not required to experiment with a child's welfare in order to permit a parent to prove his or her suitability * * *."  *Id.* at ¶ 26.

{¶33}  L.D. failed to properly care for J.M.D. in the past.  And after she and her ex-boyfriend were arrested for sexually abusing his minor daughter, there was evidence they also intended to subject J.M.D. to sexual abuse as part of some twisted religious rite of passage.  Moreover, L.D. indicated to agency caseworkers that her plan was to

live with the daughter in the grandparents' home, but the grandparents indicated that this would not be possible.

## V.  CONCLUSION

**{¶34}**  The trial court's award of permanent custody of J.M.D. to WCCS was supported by clear and convincing evidence.  The trial court did not clearly lose its way or create such a manifest miscarriage of justice to require reversal.  "We cannot fault the trial court for deciding not to experiment with the child's welfare in order to provide appellant an opportunity to prove her ability to give the child proper care."  *Id.*  We overrule the mother's assignment of error.

JUDGMENT AFFIRMED.

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS AFFIRMED and that Appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Washington County Court of Common Pleas, Juvenile Division, to carry this judgment into execution.

Any stay previously granted by this Court is hereby terminated as of the date of this entry.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, P.J. & Hoover, J.:  Concur in Judgment and Opinion.


For the Court



BY:  _____
       William H. Harsha, Judge




## NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**