[Cite as *In re: H.M.*, 2018-Ohio-3214.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
PIKE COUNTY

| | | |
|---|---|---|
| IN RE: H.M., | : | Case No. 18CA887 |
| Adjudicated Neglected and Dependent Child. | : | |
| | : | <u>DECISION AND</u> |
| | : | <u>JUDGMENT ENTRY</u> |
| | : | **RELEASED: 07/30/2018** |

APPEARANCES:

Matthew F. Loesch, Portsmouth, Ohio, for appellant.

Elizabeth M. Howard, Waverly, Ohio, for appellee.

Matthew P. Brady, Grove City, Ohio, guardian ad litem for H.M.

Harsha, J.

{¶1} Patricia Forbes, the maternal grandmother of H.M., an adjudicated neglected and dependent child, appeals from the judgment awarding permanent custody of H.M. to a county children's services agency. Forbes asserts that the trial court's award of permanent custody was against the manifest weight of the evidence. She argues several reasons support her claim that this is an exceptional case warranting a finding that the permanent custody award was against the manifest weight of the evidence.

{¶2} First she contends that the agency failed to adhere to the good-faith requirements of the Revised Code when implementing a reunification plan for the child and her. She emphasizes that she had legal custody of H.M. before H.M. was removed from her care during this proceeding. But there is no evidence in the record supporting her contention about the agency's lack of good faith. Instead, the trial court found on multiple occasions during the pendency of the case that the agency made reasonable

efforts to prevent the removal of the child from the home, eliminate continued removal, or make it possible for the child to return home; and neither Forbes nor the child's parents ever contested those findings.

{¶3}     Next Forbes claims that the agency's filing of its motion for permanent custody was retaliatory in nature.  She argues the agency filed it on the same day that the trial court scheduled a hearing on Forbes's motion for contempt against the agency for allegedly withholding her unsupervised parenting time with the child.  But again, there is no evidence in the record to support her claim.  Instead, the only evidence she cites is a caseworker's testimony refuting that claim.

{¶4}     Forbes finally argues that the permanent custody award was against the manifest weight of the evidence because the trial court granted custody of two of H.M.'s siblings to her, which implicitly recognized that she had met the terms of her case plan. But Forbes is not H.M.'s parent but merely her relative.  Thus the trial court had no duty to favor placement with Forbes if, after considering all the factors, it was in the child's best interest for the agency to receive permanent custody.  And evidence that Forbes substantially complied with the case plan could not, by itself, prove that the award of permanent custody to the agency was erroneous.

{¶5}     Instead, clear and convincing evidence supported the trial court's determination that because of H.M.'s developmental disabilities and special needs, Forbes could not provide her a legally secure permanent placement even though she could provide an appropriate one for two of her siblings.  An agency caseworker testified that during visitation, she observed very little interaction between the child and the adults, who appeared more interested in the other children than H.M.  When she

was removed from Forbes's care, H.M. was filthy and exhibited severe speech problems and extreme behavior that prevented several placements with different foster homes until successful placement at the current foster home. With one-on-one intensive care at this foster home, H.M. has shown significant improvement; she is off medication, functions well, and can speak in full sentences. When she visited with her siblings, her bad behavior returned. The guardian ad litem ("GAL") recommended that the agency receive permanent custody of H.M. because H.M.'s needs were so extreme and her behavioral issues were so extensive that permanent custody was in her best interest. We overrule Forbes's assignment of error and affirm the trial court's judgment awarding permanent custody of H.M. to the agency.

I. FACTS

{¶6}    In late April 2016, the Pike County Children's Services Board (PCCSB) received a report from the Waverly Police Department documenting a domestic-violence dispute at the home of Forbes and her husband, Richard. When PCCSB caseworkers arrived, they discovered that Forbes, her husband, and the remaining two adults at the home were severely intoxicated and five minor children, including H.M., one of her brothers, and a half-brother, were running around unsupervised inside and outside the house. Forbes is H.M.'s maternal grandmother and was her legal custodian at that time. The children and the house were dirty, there was animal feces throughout the house and on the children's beds, and there was no food, other than a partially filled container of juice. The trial court granted PCCSB emergency custody of the five children, including H.M., on that date, and removed them from Forbes's home. The

next day after a shelter-care hearing, the court found probable cause to support the agency's emergency custody of the children.

{¶7}   A little more than a month later, PCCSB filed an amended complaint alleging that H.M. was an abused, neglected, and dependent child, and requesting the permanent custody of H.M. as an initial disposition.  The sworn amended complaint stated that H.M.'s parents, Elizabeth Kovach and Justin Mathers, had children (two of H.M.'s brothers) permanently removed from their custody in a 2013 proceeding in Clark County, Ohio.  Following a hearing where H.M.'s father did not appear, the trial court adjudicated H.M. to be a neglected and dependent child and granted temporary custody of H.M. to PCCSB.  The court found that PCCSB "has made reasonable efforts to prevent the removal of the child from the home, eliminate continued removal, or make it possible for the child to return home."

{¶8}   After a dispositional hearing the court ordered the child to remain in the temporary custody of the agency, PCCSB to prepare a case plan for H.M.'s mother, Kovach, with reunification as the goal, and granted Forbes (Kovach's mother and H.M.'s grandmother) and Kovach supervised parenting time with the child at the agency.  The parties stipulated and the court found that PCCSB "made reasonable efforts to eliminate the continued removal of the child from the child's home, or to make it possible for the child to return safely home."

{¶9}   Following an initial review hearing the court continued the temporary custody order and granted Forbes and Kovach holiday parenting time in addition to the previously ordered supervised parenting time.  The court again found that PCCSB had made the required reasonable efforts to make it possible for H.M. to return safely home.

Subsequent review entries expanded Forbes's and Kovach's parenting time with H.M. to include limited, unsupervised parenting time at Forbes's home.  Each time the court found that the agency had made the requisite reasonable efforts to reunify the child.

{¶10}  In July 2017, Forbes filed a motion to find PCCSB in contempt for allegedly refusing to allow her the ordered unsupervised parenting time with H.M.  The court scheduled the matter for a hearing, and on that date, PCCSB filed a motion requesting the modification of temporary custody of H.M. to permanent custody.  In opposition Forbes filed a motion for the court to return custody of H.M. to her.

{¶11}  Attorney Matthew P. Brady, the GAL for H.M., filed a report that recommended the court award permanent custody of H.M. to the agency.  Brady concluded that while H.M. was in Forbes's care, she fell severely behind in her development, speaking very little, and exhibiting bad behavior.  Because Forbes would likely have H.M.'s brother and half-brother in her care as well, Forbes would not be able to provide H.M. with the round-the-clock attention that she received from her foster home and needed to continue to develop.  Although the GAL recommended that the other children could still potentially be placed with Forbes, he could not make the same recommendation for H.M. because of her more extensive developmental delay and behavioral problems.  This resulted in "compelling reasons to grant PCCSB permanent custody of H.M. so that she can hopefully be adopted in a home where she can receive fairly intensive attention and care for her developmental, medical, and educational issues even if permanent custody is not granted to H.M.'s siblings."

{¶12}  The trial court held a hearing on PCCSB's motion for permanent custody and Forbes's motion to return custody.  PCCSB caseworker Ashley Leasure testified

that at the time H.M. and the four other children were removed from Forbes's home in late April 2016, H.M. was filthy, was wearing pressure garments from a burn she received in 2014, and had fingerprint bruises on her forearm. H.M. had also been off her prescribed medications because of missed pediatrician appointments. According to Leasure, H.M. exhibited poor behavior—she smeared feces everywhere, urinated and defecated on the floor, hit, spit, kicked, punched, and swore—which led to multiple placements with different foster families until her current foster home where she was placed in July 2017. H.M. also initially had severe speech delays, which made it difficult for others to understand any words she spoke.

**{¶13}** Leasure testified that in her current foster placement, H.M. had improved dramatically because as the only foster child in the home, she received the intensive one-on-one care that she needed. Because of this new environment H.M. functions very well, is off all of her prior medications, and speaks in full, fluent sentences. She is in occupational and speech therapy.

**{¶14}** Leasure further testified that during visitation with Forbes, Kovach, and the other children, H.M. tried to interact with Forbes and Kovach, but she was usually not successful because they paid more attention to the other children. During the agency visits when she interacted with her siblings, some of her old bad behaviors returned, including hitting them. Leasure was concerned about Forbes's failure to maintain employment and housing—she had several different jobs and homes during the pendency of the case, losing several residences because of a failure to pay rent.

**{¶15}** Leasure concluded that Kovach could not be a primary caretaker for her daughter, H.M., or any of the other children because she never actually provided the

sole care for the children and never took the main parental role during visitation. And Mathers, H.M.'s father, had abandoned her, not communicating with her and not contesting the permanent-custody proceeding. Both of H.M.'s parents had two of H.M.'s brothers permanently removed from their custody by a Clark County, Ohio court in 2013.

{¶16} Dr. Robin Rippeth, a professional clinical counselor and psychologist with Mid-Ohio Psychological Services, testified that she conducted a psychological evaluation of Kovach that revealed she had an intellectual developmental disorder with an IQ of 57, which is in the extremely low range of intellectual functioning. Based on her evaluation of Kovach Dr. Rippeth concluded that she would have a very difficult time parenting on her own without frequent intervention from agencies.

{¶17} Forbes admitted that when PCCSB removed H.M. and the other children from her residence in April 2016, it was in deplorable condition. At that time she was arrested for disorderly conduct and obstructing police business, ultimately pleading guilty to the latter charge. Forbes also agreed that when H.M. was in her care, she was behind where most children her age would be for speech, education, and behavior. And she additionally admitted that when H.M. was in her care, she had her attend an elementary school that later removed her because of her many behavior issues, including being mean with teachers and students, not listening or cooperating, and having gross motor-skill problems and developmental issues.

{¶18} The GAL, Matthew Brady, testified that H.M. had experienced tremendous strides in foster care and that he was concerned that these improvements would not continue if she was returned to her maternal grandmother Forbes's custody. Based on

his investigation, interviews, and observations of the children, Brady believed that H.M.'s needs were so extreme that they could not be met in any other way than by awarding permanent custody of her to PCCSB. Brady concluded that because of H.M.'s extreme needs and extensive behavioral issues, which required her to be homeschooled in foster care, placing H.M. with her siblings would pose an extreme burden that might disrupt the ability of anyone having custody to care for the other children.

{¶19} The trial court awarded permanent custody of H.M. to the agency. The court issued detailed findings of fact and conclusions of law determining by clear and convincing evidence that: (1) the child cannot be placed with either of her parents, Kovach or Mathers, or maternal grandmother, Forbes, within a reasonable time and should not be returned to them; (2) Kovach and Mathers had previously had their parental rights terminated; and (3) permanent custody in favor of PCCSB was in the child's best interests. The trial court additionally found that because it was ruling that two of H.M.'s brothers, W.S. and C.M., should be eventually returned to Forbes's care, H.M. should not be maintained in that environment, and that due to H.M.'s special needs and behavior issues, it was impossible to return her to Forbes's care.

## II. ASSIGNMENT OF ERROR

{¶20} Forbes assigns the following error for our review:

THE TRIAL COURT'S DECISION TO AWARD PERMANENT CUSTODY OF H.M. TO THE PCCSB WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE.

## II. STANDARD OF REVIEW

**{¶21}** "Generally, a reviewing court will not disturb a trial court's permanent custody decision unless the decision is against the manifest weight of the evidence." *In the Matter of A.M.*, 4th Dist. Athens No. 17CA43, 2018-Ohio-2072, ¶ 38. "To determine whether a permanent custody order is against the manifest weight of the evidence, an appellate court must weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving evidentiary conflicts, the trial court clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered." *In re J.M.D.*, 4th Dist. Washington No. 14CA2, 2014-Ohio-1609, ¶ 17. "In reviewing the evidence under this standard, we must defer to the trial court's credibility determinations because of the presumption in favor of the finder of fact." *Id.*

**{¶22}** In a permanent custody case, the dispositive issue on appeal is "whether the juvenile court's findings * * * were supported by clear and convincing evidence." *In re K.H.*, 119 Ohio St.3d 538, 2008-Ohio-4825, 895 N.E.2d 809, ¶ 43; *see also* R.C. 2151.414(B)(1). "Clear and convincing evidence" is "that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 69, 120 N.E.2d 118 (1954), paragraph three of the syllabus; *State ex rel. Miller v. Ohio State Hwy. Patrol*, 136 Ohio St.3d 350, 2013-Ohio-3720, 995 N.E.2d 1175, ¶ 14. "[I]f the children services agency presented competent and credible evidence upon which the trier of fact reasonably could have formed a firm belief that permanent custody is warranted, then the court's

decision is not against the manifest weight of the evidence." *In re R.M.*, 2013-Ohio-3588, 997 N.E.2d 169, ¶ 55 (4th Dist.).

**{¶23}** In sum, a reviewing court should find a trial court's permanent custody decision against the manifest weight of the evidence only in the exceptional case in which the evidence weighs heavily against the decision. *In the Matter of K.W.*, 2018-Ohio-1933, __ N.E.3d __, ¶ 27 (4th Dist.).

## IV. LAW AND ANALYSIS

### A. Permanent Custody Requirements

**{¶24}** In her assignment of error Forbes asserts that the trial court's permanent custody decision is against the manifest weight of the evidence.[1]

**{¶25}** R.C. 2151.414 governs the procedure for awarding permanent custody of a child to a public children services agency or a private child placing agency. *See* R.C. 2151.413. Before a trial court may award a children services agency permanent custody, it must find by clear and convincing evidence that: (1) one of the circumstances in R.C. 2151.414(B)(1) applies; and (2) awarding the children services agency permanent custody would be in the child's best interest.

**{¶26}** Forbes does not contest the trial court's finding that R.C. 2151.414(B)(1)(d) applied because H.M. had been in the temporary custody of PCCSB for 12 or more months of a consecutive 22-month period. Therefore the dispositive issue is whether the trial court correctly determined that awarding H.M. to the permanent custody of PCCSB was in the child's best interest.

---

[1] Although the text of Forbes's assignment of error appears to also contest the sufficiency of the evidence, it is in essence a manifest-weight argument. Our analysis is likewise. *See In re B.E.*, 4th Dist. Highland No. 13CA26, 2014-Ohio-3178, ¶ 26.

**{¶27}** R.C. 2151.414(D)(1) provides that:

In determining the best interest of a child at a hearing held pursuant to division (A) of this section * * *, the court shall consider all relevant factors, including, but not limited to, the following:

(a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

(b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

(c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period * * *;

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

**{¶28}** Determining whether granting permanent custody to a children's services agency will promote a child's best interest involves a delicate balancing of "all relevant factors" as well as the "five enumerated statutory factors." *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-73, 2007-Ohio-1104, 862 N.E.2d 816, ¶ 57. None of the best-interest factors requires a court to give it "greater weight or heightened significance." *Id.* Instead, the trial court considers the totality of the circumstances when making its best-interest determination. *A.M.*, 2018-Ohio-2072, at ¶ 55.

### B. Reasonable Efforts for Reunification

**{¶29}** Forbes does not separately address each of the best-interest factors in her appeal. Instead, she acknowledges that only an exceptional case in which the

evidence weighs heavily against the permanent custody decision will warrant reversal, *see K.W.*, 2018-Ohio-1933, __ N.E.3d __, at ¶ 27, and she raises several arguments to claim that this is an exceptional case.

**{¶30}** First she contends that PCCSB failed to adhere to the good-faith requirements of the Revised Code seeking reunification of the child with her in light of the fact she had legal custody of H.M. before H.M. was removed from her care. Forbes cites no evidence or authority to support her contention.

**{¶31}** Although R.C. 2151.419(A) requires a trial court to determine whether a children services agency "made reasonable efforts to prevent the removal of the child from the child's home, to eliminate the continued removal of the child from the child's home, or to make it possible for the child to safely return home," this provision does not apply to motions for permanent custody. *In re C.B.C.*, 4th Dist. Lawrence Nos. 15CA18 and 15CA19, 2016-Ohio-916, ¶ 72. But PCCSB had to establish that at prior stages of the child-custody proceeding that it had made reasonable efforts toward family reunification. *Id.* The trial court found during each of these prior stages, including adjudication, disposition, and review that PCCSB had made the requisite reasonable efforts to reunify H.M. with her family. Neither Forbes nor Kovach contested these findings.

**{¶32}** Moreover, although the trial court was not required to do so, it concluded in its permanent custody decision that "[r]easonable efforts were made with Maternal Grandmother, through case planning and facilitation of supervised visitation with H.M. and Maternal Grandmother," but that "due to H.M.'s special needs and behavior issues it is impossible to return the minor child to her care." The court's finding was supported

by clear and convincing evidence provided by caseworker Leasure, the GAL, and even Forbes herself, who acknowledged that when H.M. was in her care, she was developmentally delayed in speech, education, and behavior, and that her behavioral issues were so pronounced that she had to be removed from school. We reject Forbes's unsupported contention that PCCSB failed to adhere to any good-faith reunification requirements.

### C.  Retaliatory Conduct

**{¶33}**  Next Forbes claims that PCCSB's motion for permanent custody was retaliatory in nature. She argues the agency filed the motion on the same day that the trial court scheduled a hearing on her motion for contempt against the agency for allegedly withholding her unsupervised parenting time with H.M. Again, she cites no authority for this claim. And the evidence she cites to support her claim actually refutes it—Leasure testified that the agency's motion for permanent custody was not filed because of Forbes's motion to hold the agency in contempt. We find this claim to be meritless.

### D.  Compliance with Case Plan

**{¶34}**  Finally Forbes argues that the trial court's permanent custody decision was against the manifest weight of the evidence because the court granted her custody of two of H.M.'s siblings, which implicitly recognized her compliance with all of the requirements of her case plan.

**{¶35}**  We reject Forbes's argument; although a parent's compliance with a case plan may be relevant in the best-interest determination, it is not necessarily dispositive. *A.M.,* 2018-Ohio-2072, at ¶ 56. And Forbes is not H.M.'s parent; she is the maternal

grandmother. Courts are not required to favor relative or non-relative placement if, after considering all the factors, it is in the child's best interest for the agency to be granted permanent custody. *In re E.F.*, 4th Dist. Athens No. 16CA22, 2017-Ohio-133, ¶ 23. Finally, the GAL's and Leasure's testimony about H.M.'s special needs and reversion to bad behavior around her siblings justified the trial court's different treatment of her from her siblings.

### E.  Best Interest Determination

### 1.  Child's Interactions and Interrelationships

**{¶36}** The trial court determined that H.M. did not display a significant bond with either her mother or her grandmother and had been abandoned by her father. H.M.'s behavior worsened when she visited her brothers. Conversely, H.M. had developed a very strong bond with her foster mother and had made dramatic improvements in foster care. The evidence, including caseworker Leasure's testimony, supported the court's findings.

### 2.  Child's Wishes

**{¶37}** The trial court found that H.M. was too young and developmentally delayed to express her wishes, but that the GAL recommended that permanent custody be awarded to PCCSB because it was in the child's best interest. The court's finding was supported by the GAL's testimony and report.

### 3.  Custodial History

**{¶38}** The trial court found that PCCSB first obtained custody of H.M. in late April 2016 and had maintained custody since that date, with the child's current foster-

care placement benefitting her greatly. Leasure's testimony supported the court's finding.

### 4. Legally Secure Permanent Placement

**{¶39}** A legally secure permanent placement is a safe, stable, consistent environment where a child's needs will be met. *A.M.* at ¶ 63. The court noted that neither parent could provide H.M. with a legally secure permanent placement because the mother was not able to care for the child, and the father had abandoned her. This finding was supported by Dr. Rippeth's testimony, as well as the testimony of the GAL, and caseworker.

**{¶40}** The trial court found that Forbes was unable to provide a legally secure permanent placement for H.M. because of the child's special needs. Forbes's own testimony conceded that H.M. did not develop normally and did not behave properly when she was in Forbes's custody. Leasure testified that during visitation, Forbes ignored H.M.'s attempts to interact with her and instead paid more attention to the other children. The GAL testified that he was concerned that the tremendous advances in development and behavior that H.M. had experienced in foster care would not continue if she was returned to Forbes's custody.

**{¶41}** The trial court further concluded that because two of H.M.'s brothers would gradually be returned to Forbes's care, it felt that H.M. "would not be able to be maintained in that environment." Leasure's testimony that H.M.'s bad behavior returned when she was around her siblings supported the court's finding. The GAL's report and testimony also supported it—the GAL concluded that if Forbes had custody of H.M.'s

brother and half-brother, she would not be able to provide H.M. with the round-the-clock attention that she needed to continue to develop.

### 5.  R.C. 2151.414(E)(11)

{¶42}  The trial court found and the evidence was uncontroverted at trial that H.M.'s parents had their parental rights terminated in a 2013 permanent custody case in Clark County, Ohio involving two of the H.M.'s siblings.

### 6.  Balancing the Best-Interest Factors

{¶43}  After considering these factors, we are not persuaded that the trial court's best-interest determination is against the manifest weight of the evidence.  Instead, the clear and convincing evidence establishes that placing H.M. in the agency's permanent custody is in her best interest.  She suffers from severe developmental delays and behavioral issues that have been alleviated only when she has been under the intensive, one-on-one care of her most recent foster-care placement.  Neither her parents nor Forbes can provide a legally secure permanent placement for her given her special needs and behavioral issues.

### V. CONCLUSION

{¶44}  Having overruled Forbes's assignment of error, we affirm the judgment of the trial court awarding permanent custody of H.M. to PCCSB.

JUDGMENT AFFIRMED.

## <u>JUDGMENT ENTRY</u>

It is ordered that the JUDGMENT IS AFFIRMED and that Appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Pike County Court of Common Pleas, Juvenile Division, to carry this judgment into execution.

Any stay previously granted by this Court is hereby terminated as of the date of this entry.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Hoover, P.J. & McFarland, J.: Concur in Judgment and Opinion.


For the Court


BY: _____
William H. Harsha, Judge




## NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**