[Cite as *In re J.A.*, 2019-Ohio-4116.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
SCIOTO COUNTY

IN THE MATTER OF:            :       Case No. 19CA3878

J.A.                        :
V.A.                                DECISION AND
                            :       JUDGMENT ENTRY

ADJUDICATED DEPENDENT
CHILDREN                    :       **RELEASED 10/02/2019**

_____
APPEARANCES:

Richard W. Campbell, Portsmouth, Ohio, for appellant.

David M. Huddleston, New Boston, Ohio, for appellee.
_____
Hess, J.

{¶1}    The father of J.A. and V.A. appeals from a judgment of the Scioto County

Common Pleas Court, Juvenile Division, that awarded permanent custody of the

children to the Scioto County Children Services Board (the "Agency") pursuant to R.C.

2151.414(B)(1)(d).[1]   Father contends that the statute violates the procedural due

process rights of parents and children.  However, he did not raise this constitutional

argument at the trial level or assert plain error on appeal.  We decline to sua sponte

conduct a plain error analysis and reject his argument.

{¶2}    Father also contends that the permanent custody decision was against the

manifest weight of the evidence.  However, after weighing the evidence and all

reasonable inferences and considering the credibility of the witnesses after according

the requisite deference to the trial court's determinations, we conclude that the trial

_____
[1] The children's mother did not participate in this appeal.

court did not clearly lose its way or create a manifest miscarriage of justice.  Therefore, we reject Father's argument and affirm the trial court's judgment.

## I.  FACTS AND PROCEDURAL HISTORY

{¶3}   In June 2016, the Agency filed a complaint alleging that the children, then ages 10 and 13, appeared to be neglected and dependent children because their parents were heroin addicts and the family lived in an unsafe abandoned building.  The trial court granted the Agency temporary emergency custody of the children and confirmed that order after a probable cause hearing.  During the adjudicatory hearing, the parties agreed that the children were neglected and dependent as alleged in the complaint.  In September 2016, the court adjudicated the children neglected and dependent and granted the Agency temporary custody.  The court granted two extensions of the temporary custody order, and in June 2018, the Agency moved for permanent custody under R.C. 2151.414(B)(1)(d).

{¶4}   At a hearing on the motion, Agency caseworker Angie Kemper testified that after the removal of the children, the parents initially did not enter drug treatment and had sporadic visitation with the children.  In January 2017, the parents entered an inpatient drug treatment program where they had regular visits with the children.  The parents completed inpatient treatment in April 2017 and later entered outpatient treatment but were discharged for failure to comply with program requirements. In November 2017, Father told Kemper that the parents had relapsed and did not want to visit the children until they were back in treatment.  The parents contacted the Agency again in late April 2018, around the time they had entered another treatment program. Kemper testified that the children had lived in the same foster home for a little over a

year, that the children were doing well there, and that the foster parents were willing to adopt them if the Agency obtained permanent custody.

{¶5} The children's guardian ad litem, Adrienne Buckler, recommended that the court grant the permanent custody motion. Buckler testified that the parents had a suitable home at the time of the hearing. However, she expressed concern regarding their history of instability, drug use, and lack of employment. She testified that the children were smart and mature enough to make a decision about where they wanted to live. She testified that the children wanted their foster parents to adopt them. The children worried about their parents' sobriety and housing situation and told Buckler, "[W]e love where we are, we don't want to be back with our parents because we were never stable there and now we can come home and have a meal and someone can help us with our homework and we have friends now and we get to do things like cheerleading or different school activities." V.A. still wanted to have some contact with the parents but J.A. did not.

{¶6} Father testified that he suffered from severe chronic pain and was a drug addict. In 2015, he sold the family home due to his addiction, and the family was homeless. However, Father testified that his grandmother had died and left her home to him, that he and Mother had resided there for about a year, and that the home was suitable for the children. Father admitted that he had no source of income at the time of the hearing and that he and Mother had pending drug-related charges based on events that allegedly occurred in February 2018. However, Father thought they would get probation. He also testified that he had made "tremendous progress" with his drug problem, recently completed an intensive outpatient program, and was receiving

ongoing treatment.  Father wanted an opportunity for the children to see him sober and to show them that he had changed.  Father claimed that the children's foster parents had blocked his phone calls since December 2017.

{¶7}   Mother admitted that she had been a drug addict since age 12 and that the children had never really seen her sober. However, she was in treatment at the time of the hearing, and the parents had a suitable home for the children.  Mother also believed the pending criminal charges would result in probation and planned to go back to school soon.

{¶8}   The magistrate recommended that the trial court grant the permanent custody motion, concluding that the children had been in the temporary custody of the Agency for twelve or more months of a consecutive twenty-two-month period and that it was in the best interest of the children to grant the motion.  The magistrate found that the relationships between the children and their parents were "irreparable," noting that the children did not know what their parents were like sober, did not want to live with them, and wanted either limited or no contact with them.  The children did, however, have "a good relationship with their foster parents" and told the guardian ad litem that they wanted their foster parents to adopt them.  The magistrate found that the children had been in the custody of their parents until the court removed them, and a legally secure permanent placement could not be achieved without a grant of permanent custody to the Agency.  The magistrate explained that "the parents' drug addictions and inabilities to conquer those addictions continue to be barriers to providing the children with a safe, stable and secure home environment."  While in foster care, the children were "in a stable home environment * * * for the first time in their lives" and had seen

"what life can be like." The magistrate found that none of the factors in R.C. 2151.414(E)(7) through (E)(11) applied.

**{¶9}** The trial court adopted the magistrate's decision, but Father filed an objection to it asserting that the evidence did not support the best interest finding. The trial court overruled the objection and granted the Agency permanent custody as stated in the court's prior order, explaining:

> The objection fails because it is not specific and did not reference the transcript. It also fails because after a thorough review of the case file and the transcript of the proceedings, the Court finds no mistakes of fact or conclusions of law. The parents did not reach sobriety during the lives of these children from birth to the six (6) months immediately prior to the hearing of this motion. After the initial removal in this matter, the parents continued their long-established pattern of illegal drug abuse (although not continuously) for 18 months. During that period, they used heroin and were indicted on felony drug charges.
>
> The children, for the first time in their lives, are stable. The children do not believe that their parents can maintain the stability that they may have just recently reached. The Court, likewise, believes that this stability may be short term just like the shorter periods of stability that they were able to reach after the removal. The Court further believes that their testimony, which states their beliefs that they will receive only probation for the felony charges, is speculation at best.

## II. ASSIGNMENTS OF ERROR

**{¶10}** Father presents the following assignments of error:

I. THE TRIAL COURT'S ORDER GRANTING PERMANENT CUSTODY TO [THE AGENCY] WAS NOT BASED UPON SUFFICIENT CLEAR AND CONVINCING EVIDENCE, WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, AND IT ERRED IN FINDING PERMANENT CUSTODY TO BE IN THE BEST INTEREST OF THE CHILDREN.

II. OHIO REVISED CODE 2151.414(B)(1)(d) DENIES PROCEDURAL DUE PROCESS TO BOTH PARENTS AND CHILDREN IN VIOLATION OF THE UNITED STATES CONSTITUTION AND THE OHIO CONSTITUTION.

For ease of discussion, we address the assignments of error out of order.

### III. CONSTITUTIONALITY OF R.C. 2151.414(B)(1)(d)

{¶11} In his second assignment of error, Father contends that R.C. 2151.414(B)(1)(d) denies procedural due process to parents and children. Father acknowledges that in *In re Workman*, 4th Dist. Vinton No. 02CA574, 2003-Ohio-2220, we rejected a constitutional challenge to R.C. 2151.414(B)(1)(d). However, he asserts that the statute conflicts with the procedural due process framework for proceedings to terminate parental rights as set forth in *Santosky v. Kramer*, 455 U.S. 745, 102 S.Ct. 1388, 71 L.E.2d 599 (1982). He claims that the statute "substitutes a time frame for an actual determination of unfitness," "creates an irrebuttable presumption of parental unfitness," and improperly shifts the burden of proof from a children services agency to parents. He also claims other state appellate courts have found similar statutes unconstitutional.

{¶12} "Failure to raise at the trial court level the issue of the constitutionality of a statute * * *, which issue is apparent at the time of trial, constitutes a waiver of such issue and a deviation from this state's orderly procedure, and therefore need not be heard for the first time on appeal." *State v. Awan*, 22 Ohio St.3d 120, 489 N.E.2d 277 (1986), syllabus. Nonetheless, we have "discretion to consider a forfeited constitutional challenge to a statute." *State v. Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, 19 N.E.3d 900, ¶ 16. *See also In re M.D.*, 38 Ohio St.3d 149, 527 N.E.2d 286 (1988), syllabus. "We may review the trial court decision for plain error, but we require a showing that but for a plain or obvious error, the outcome of the proceeding would have been otherwise, and reversal must be necessary to correct a manifest miscarriage of

justice." (Citation omitted.) *Quarterman* at ¶ 16. "The burden of demonstrating plain error is on the party asserting it." *Id.* The Supreme Court of Ohio has also "stated that a forfeited constitutional challenge to a statute is subject to review 'where the rights and interests involved may warrant it.' " *Id.*, quoting *In re M.D.* at syllabus.

**{¶13}** Father did not assert his constitutional challenge at the trial level. He also did not suggest that we review his assignment of error using a plain error analysis, and we decline to sua sponte conduct such an analysis. *See In re K.W.*, 111 N.E.3d 368, 2018-Ohio-1933, ¶ 94 (4th Dist.). We overrule the second assignment of error.

## IV. MANIFEST WEIGHT OF THE EVIDENCE

**{¶14}** In his first assignment of error, Father contends that the permanent custody decision was not supported by sufficient evidence and was against the manifest weight evidence. Father asserts a grant of permanent custody was not in the best interest of the children because he consistently expressed a desire to regain custody of the children, Kemper admitted that he had made progress toward the case plan goal of reunification, he completed some drug treatment during the proceedings, he was in treatment at the time of the permanent custody hearing, and he presented uncontroverted evidence that he owned a suitable home for the children.

**{¶15}** Although the assigned error references sufficiency and manifest weight of the evidence, Father's argument appears to focus on the weight of the evidence. In *In re H.M.*, 4th Dist. Pike No. 18CA887, 2018-Ohio-3214, we explained:

> "Generally, a reviewing court will not disturb a trial court's permanent custody decision unless the decision is against the manifest weight of the evidence." *In the Matter of A.M.*, 4th Dist. Athens No. 17CA43, 2018-Ohio-2072, ¶ 38. "To determine whether a permanent custody order is against the manifest weight of the evidence, an appellate court must weigh the evidence and all reasonable inferences, consider the

credibility of the witnesses, and determine whether in resolving evidentiary conflicts, the trial court clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered." *In re J.M.D.*, 4th Dist. Washington No. 14CA2, 2014-Ohio-1609, ¶ 17. "In reviewing the evidence under this standard, we must defer to the trial court's credibility determinations because of the presumption in favor of the finder of fact." *Id.*

In a permanent custody case, the dispositive issue on appeal is "whether the juvenile court's findings * * * were supported by clear and convincing evidence." *In re K.H.*, 119 Ohio St.3d 538, 2008-Ohio-4825, 895 N.E.2d 809, ¶ 43; *see also* R.C. 2151.414(B)(1). "Clear and convincing evidence" is "that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. [469], 120 N.E.2d 118 (1954), paragraph three of the syllabus; *State ex rel. Miller v. Ohio State Hwy. Patrol*, 136 Ohio St.3d 350, 2013-Ohio-3720, 995 N.E.2d 1175, ¶ 14. "[I]f the children services agency presented competent and credible evidence upon which the trier of fact reasonably could have formed a firm belief that permanent custody is warranted, then the court's decision is not against the manifest weight of the evidence." *In re R.M.*, 2013-Ohio-3588, 997 N.E.2d 169, ¶ 55 (4th Dist.).

(Alteration sic.)  *Id.* at ¶ 21-22.

**{¶16}** R.C. 2151.414(B)(1)(d) provides that a court may grant permanent custody to a public children services agency if it determines by clear and convincing evidence that "[t]he child has been in the temporary custody of one or more public children services agencies * * * for twelve or more months of a consecutive twenty-two-month period" and "that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody."

**{¶17}** Father does not dispute that the Agency satisfied the time requirement but challenges the best interest determination.  R.C. 2151.414(D)(1) states:

In determining the best interest of a child, * * * the court shall consider all relevant factors, including, but not limited to, the following:

(a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

(b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

(c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies * * * for twelve or more months of a consecutive twenty-two-month period, * * *;

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

No one factor has "greater weight or heightened significance." *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816, ¶ 57. "Instead, the trial court considers the totality of the circumstances when making its best interest determination." *In re Z.M.*, 4th Dist. Scioto No. 18CA3856, 2019-Ohio-2564, ¶ 24.

### A. Interactions and Interrelationships of the Children

**{¶18}** The evidence demonstrates that the children had a poor relationship with their parents but bonded with their foster parents. The children's parents did not consistently visit the children during the pendency of the case due to the parents' drug addiction. J.A. does not want further contact with the parents, and V.A. desires only limited contact. The children are concerned with their parents' continued sobriety and housing situation and enjoy the stability they have achieved in foster care.

### B. Wishes of the Children

**{¶19}** The children are smart and mature, and their wish, as expressed through their guardian ad litem, is to be adopted by their foster parents.

C.  Custodial History

**{¶20}** The children were in the custody of their parents from birth until June 2016.  At the time of the permanent custody hearing, the children had been in the temporary custody of the Agency for twelve or more months of a consecutive twenty-two-month period.

D.  Legally Secure Permanent Placement

**{¶21}**  This court and others have generally interpreted the phrase "legally secure permanent placement" to "mean a safe, stable, consistent environment where a child's needs will be met."  *In re M.B.*, 4th Dist. Highland No. 15CA19, 2016-Ohio-793, ¶ 56.  Although the parents presented evidence that they had a suitable home for the children at the time of the permanent custody hearing, "[a] legally secure permanent placement is more than a house with four walls.  Rather, it generally encompasses a stable environment where a child will live in safety with one or more dependable adults who will provide for the child's needs."  *Id.*

**{¶22}** The evidence supports the trial court's finding that the children's need for a legally secure permanent placement cannot be achieved without a grant of permanent custody to the Agency.  The parents have consistently struggled with drug addiction, which caused Father to sell a prior family home and rendered the family homeless.  The parents successfully completed inpatient treatment during the pendency of this case, but they were discharged from outpatient treatment, relapsed, and had pending drug-related charges at the time of the permanent custody hearing.  Although the parents were back in treatment at the time of the hearing, that fact did not guarantee that they would remain drug-free and able to care for the children.  We have "recognized that a

parent's past history is one of the best predictors of future behavior." *In re Z.M.*, 4th Dist. Scioto No. 18CA3856, 2019-Ohio-2564, ¶ 33. In this case, the parents' history supports the trial court's finding that the stability the parents had "just recently reached" might be "short term just like the shorter periods of stability that they were able to reach after the removal."

**{¶23}** The Agency presented evidence that the children had a stable home with foster parents who wanted to adopt them if the Agency obtained permanent custody. The trial court could have determined that giving the children "the permanency and stability that they need, rather than continuing to hold them in custodial limbo" while the parents attempted to remain drug-free and navigated their pending criminal cases would better serve the best interest of the children. *See id.* at ¶ 34. "[T]he permanent custody statutes do not contemplate leaving children in custodial limbo for an extended period of time while a parent attempts to establish that the parent can provide the child with a legally secure permanent placement." *Id.* "[K]eeping children in limbo is not in their best interests." *Id.*, citing *In re B.C.*, 141 Ohio St.3d 55, 2014-Ohio-4558, 21 N.E.3d 308, ¶ 20, quoting *Lehman v. Lycoming Cty. Children's Servs. Agency*, 458 U.S. 502, 513-514, 102 S.Ct. 3231, 73 L.Ed.2d 928 (1982) (" 'There is little that can be as detrimental to a child's sound development as uncertainty over whether he is to remain in his current "home," under the care of his parents or foster parents, especially when such uncertainty is prolonged' ").

E.  Factors in R.C. 2151.414(E)(7) to (E)(11)

**{¶24}** The Agency contends that R.C. 2151.414(E)(10) applies because the parents abandoned the children. The Agency asserts that pursuant to R.C.

2151.011(C), abandonment is presumed because the parents failed to visit or maintain contact with the children for more than 90 days, i.e., from late November 2017 until late April 2018. However, the trial court found that none of the factors in R.C. 2151.414(E)(7) to (E)(11) applied, and it was free to believe Father's testimony that the foster parents had blocked his phone calls since December 2017.

### F.  Totality of the Circumstances

**{¶25}**  Based on the foregoing, we conclude that the trial court's decision to grant permanent custody to the Agency was not against the manifest weight of the evidence. The Agency presented competent and credible evidence upon which the trial court reasonably could have formed a firm belief that permanent custody was warranted. We overrule the first assignment of error.

### V.  CONCLUSION

**{¶26}**  Having overruled the assignments of error, we affirm the trial court's judgment.

JUDGMENT AFFIRMED.

## JUDGMENT ENTRY

It is ordered that the JUDGMENT IS AFFIRMED and that Appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Scioto County Common Pleas Court, Juvenile Division, to carry this judgment into execution.

Any stay previously granted by this Court is hereby terminated as of the date of this entry.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J. & McFarland, J.: Concur in Judgment and Opinion.

For the Court

BY: _____
Michael D. Hess, Judge

## NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**