[Cite as *In re Am.H.*, 2019-Ohio-4374.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

In re Am.H., Al.H.                         Court of Appeals No. L-19-1025

                                          Trial Court No. JC 17264197

                                          **DECISION AND JUDGMENT**

                                          Decided: October 25, 2019

* * * * *

Christopher S. Clark, for appellant.

Jill E. Wolff, for appellee.

* * * * *

**SINGER, J.**

{¶ 1} Appellant, A.H., appeals the December 17, 2018 judgment of the Lucas County Court of Common Pleas, Juvenile Division, that denied appellant's motion for reunification with his children Am.H. and Al.H. For the following reasons, we affirm the trial court's judgment.

{¶ 2} Appellant and his wife N.W. are the biological parents of both children. Am.H. was born in 2015 and his sister Al.H. was born in 2016. Both children have been removed from their parents' custody and are residing with N.W.'s cousins.

{¶ 3} On August 11, 2017, LCCS filed a complaint alleging dependency and neglect. The children were removed from their parents' home shortly thereafter and placed in the custody of LCCS.

{¶ 4} The complaint for dependency and neglect was filed after LCCS received three referrals from other children who made allegations of sexual abuse against appellant and N.W. A 17 year old alleged that N.W., with encouragement from appellant, inappropriately texted her and touched her, an 11 year old alleged he was forced to have sex with N.W., and appellant's four-year-old son, from another relationship, alleged N.W. performed oral sex on him while appellant was present.

{¶ 5} A caseworker was assigned to the family and a case plan was formulated with the goal being reunification of the family. Both parents were required to complete a dual diagnostic assessment and complete any recommendations that came out of that assessment. No recommendations were made following the assessments.

{¶ 6} They were also required to complete a sex offender treatment course. Both parents completed the assessments following their release from custody, but neither completed the sex offender treatment course. For the sex offender treatment course to be permitted, appellant would have to admit to sexually abusing a child or to be convicted of

2.

such abuse. Both parents vehemently denied the allegations during the course of LCCS's investigation into the child abuse.

{¶ 7} In December of 2017, N.W. was charged with three counts of rape and one count of gross sexual imposition based on these allegations. Appellant was charged with complicity in those crimes.

{¶ 8} On January 23, 2018 and March 28, 2018, the trial court determined that LCCS had made reasonable efforts to reunite the family as part of ongoing case plans created by the agency. During this time period, Am.H. and Al.H. were placed with N.W.'s cousins as a temporary relative placement before gaining legal custody of the children.

{¶ 9} On May 15, 2018, both parents were found not guilty following a jury trial. After the not guilty verdict, LCCS removed the sexual offender training from the case plan from both parents' case plans as they were no longer eligible for the course.

{¶ 10} During the pendency of the proceeding, both parents have been able to visit with their children once a week for several hours in a level one supervision area. This is an area where the parents were observed at all times by a LCCS staff member or security guard.

**Reunification Hearing**

{¶ 11} After the not guilty verdict, both parents filed separate motions for reunification with the juvenile court. Appellant's motion made similar arguments to

3.

those made in his brief on appeal. A hearing was held on both motions on September 11, 2018, before a magistrate.

{¶ 12} N.W. testified in support of her own motion for reunification at the hearing. At the hearing, N.W. admitted to sending suggestive texts with the 17 year old and to inappropriately touching the young girl. This was the first instance in which she made that admission to LCCS staff. N.W. testified that despite it not being included on her original case plan, she did voluntarily take a parenting course. N.W. sought the return of children to her or appellant's custody.

{¶ 13} Several members of the LCCS staff also testified at the hearing on the motion regarding custody of the children. Chrishanna Osley was a caseworker involved with appellant's family. She stated that although the original goal was reunification of the family and that both parents completed their case plans, there were still concerns at the agency about reunification of the family. The caseworker remained concerned because of the number of complaints of sexual abuse as well as the varying ages and genders of the children making the allegations. These concerns were not relieved after the not guilty verdict. She testified there was never any consideration of moving the parents to a different level of supervision during their visits with their children and stated that she was unsure what the parents could have done to be reunited with their children or relieve any of the agency's concerns for the safety of Am.H. and Al.H.

{¶ 14} Osley stated that, in general, appellant was uncooperative and angry during the entire process. She testified that she made several phone calls to appellant in an effort

4.

to better schedule the visitations with his children, but was told to keep the visitation the same despite his inability to attend regularly. Osley stated that during one of these phone calls, she asked appellant why he did not come to the visitations. He responded that he had better things to do and other errands to run.

{¶ 15} She further testified that the first time she heard N.W. admit to any of the allegations was in the hearing following the motion for reunification. The caseworker was concerned about this admission at the hearing because, if N.W. had lied about this throughout the process, she wondered what else is incorrect. Osley asserted that she asked N.W. following the not guilty verdict whether the allegations were true, but N.W. denied the allegations from the 17 year old. Osley testified that she asked N.W. for this information following the not guilty verdict because double jeopardy would attach and N.W. could not get into any more trouble. N.W. continued to deny the allegations despite testifying to inappropriate touching and exchanging of text messages with the 17 year old at her trial.

{¶ 16} Osley testified that she believed that the agency made reasonable efforts to reunify the family and that the agency did the best that they were able to do.

{¶ 17} Nicole Dembski, who is an assessment worker for LCCS, was the main investigator into the 11 year old's allegations against appellant and N.W. She testified that she found the child's story consistent and credible.

{¶ 18} Christina DeSilvis, who is a caseworker in the sex abuse unit at LCCS, testified that she worked on the referrals related to the 17 year old and the four year old's

5.

allegations. DeSilvis testified that she had ongoing concerns based on the age range of the alleged victims and the fact that neither Am.H. nor Al.H. were able to report abuse due to their ages. She testified that although she was aware of an ongoing custody dispute over the four year old, that she did not believe that the young boy was coached in his disclosure by his mother. She found both allegations credible and the children's stories consistent.

{¶ 19} Laura Rubley served as the parents' first caseworker following the allegations. She testified that both parents denied any wrongdoing and stated there were several vindictive people out to get them. Rubley also testified that appellant changed his story about the 17 year old during the course of the case plan. She testified that it was difficult to get any information from appellant about even minor things such as where he worked. Appellant would only state the location of the job rather than the name of the company or what the job entailed.

{¶ 20} She testified that appellant was not as consistent with his visitation. At times, he would not show up at all and at others he would leave before the visitation was scheduled to end. Rubley also testified that at one visit, appellant left the visitation area after 30 minutes and sat in the lobby and played on his phone rather than remain and interact with his children. Rubley stated appellant informed her he was unable to consistently make his visitation because of his job schedule. She testified that she attempted to change the schedule to be more conducive to his work schedule, but struggled to work with appellant.

6.

**{¶ 21}** Rubley stated that the agency became more concerned for Am.H. and Al.H's safety when one of the children started taking their clothes off at daycare. This was reported by their foster parents. She stated that as far as the agency was concerned, based on its own investigation, the abuse took place and therefore felt that both parents needed sexual offender treatment despite their ineligibility for the course.

**{¶ 22}** A security officer who would oversee the supervised visitations with the parents testified that the interactions between appellant and his children were appropriate and he had good interactions with the children.

**{¶ 23}** Appellant testified in support of his motion that there has been an ongoing custody battle between the mother of his son and himself. He indicated that the mother of his son called the police on him several times, but the police never found any reason to worry. He also stated that this may be part of the motivation for the four year old's allegations and that the young boy may have been coached into making the allegations. He also indicated there were family disputes which may have influenced the 11 year old's allegations as well.

**{¶ 24}** Appellant testified that at times in the visitations he would become emotional and that they were very tough for him to handle which may explain some of his behavior that the caseworkers witnessed. He also stated that he knew that he was mad and upset during the entire process and that the behavior may have been perceived poorly by those around him. He also testified that he tried four or five times to get the

7.

visitations changed and even called the supervisor in an attempt to change the visitation time. He requested the children be returned to himself or N.W.

{¶ 25} Amy Stoner, the assigned guardian ad litem, testified that she observed each of the parents once during their visitations. She observed appellant about a year before the hearing on the motion for reunification took place. She testified that although the parents were found not guilty of the charges, she still had concerns about possible abuse. She remained concerned because of the number of children making allegations and was especially concerned that N.W. got on the stand and admitted to some of the allegations despite denying the allegations during the pendency of the matter. Stoner stated that she sent letters to the parents asking them to meet with her at the beginning of the case. She stated that neither parent wanted to speak to her and never made any effort to speak to her during any of the hearings that they had all attended.

### Assignments of Error

{¶ 26} Appellant brings forth two assignments of error for our review:

Assignment of Error One: The trial court erred in failing to find, and the evidence does not establish, that the agency used reasonable efforts to prevent the children's continued removal from the home.

Assignment of Error Two: The trial court abused its discretion in denying the appellant-father's motion for reunification, as a preponderance of the evidence does not demonstrate that awarding legal custody to a third party is in the best interest of the children.

8.

## Reasonable Efforts

{¶ 27} With respect to appellant's first assignment of error, R.C. 2151.419(A)(1) provides:

> [A]t any hearing * * * at which the court removes a child from the child's home or continues the removal of a child from the child's home, the court shall determine whether the public children services agency or the private child placing agency that filed the complaint in the case, removed the child from home, has custody of the child, or will be given custody of the child has made reasonable efforts to prevent the removal of the child from the child's home, to eliminate the continued removal of the child from the child's home, or to make it possible for the child to return safely home.

The agency has the burden of proving that it made reasonable efforts to reunite the family. *Id.* "In determining whether reasonable efforts were made, the child's health and safety shall be paramount." *Id.*

{¶ 28} We review a trial court's finding that an agency made reasonable efforts toward reunification under a manifest weight standard. *In re E.H.*, 6th Dist. Ottawa No. 2016-Ohio-8170, ¶ 23, citing *In re Er.P.*, 6th Dist. Lucas No. L-14-1006, 2014-Ohio-2831, ¶ 24-25. The trial court is in the best position to weigh the evidence and evaluate the testimony. *In re Er.P.* at ¶ 20, citing *In re A.H.*, 6th Dist. Lucas No. L-11-1057, 2011-Ohio-4857, ¶ 28. "Thus, '[j]udgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a

9.

reviewing court as being against the manifest weight of the evidence.'" *Id.*, quoting *C.E. Morris Co. v. Foley Contr. Co.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978), paragraph one of the syllabus. "'In a reasonable efforts determination, the issue is not whether the agency could have done more, but whether it did enough to satisfy the reasonableness standard under the statute.'" *In re E.H.* at ¶ 23, quoting *In re S.R.*, 6th Dist. Lucas Nos. L-12-1298, L-12-1326, 2013-Ohio-2358, ¶ 21. "A 'reasonable effort' is an 'honest, purposeful effort, free of malice and the design to defraud or to seek an unconscionable advantage.'" *Id*.

{¶ 29} Appellant argues that LCCS never had any intention of returning the children to the parents' home as the agency never made additional requirements in the case plans after the dual diagnostic assessments were completed by the parents. Appellant would have had to admit to wrongdoing after being found not guilty of a crime in order to participate in the sex offender treatment class recommended by LCCS.

{¶ 30} Appellee argues that reasonable efforts to reunify the family were made when visitations were arranged and services were required to be completed pursuant to a case plan.

{¶ 31} We find that LCCS utilized reasonable efforts in attempting to reunite the family because a case plan was presented to appellant and because of their attempts to facilitate visitation with appellant and his children. Appellant was given a case plan which included the requirement for a dual diagnostic assessment, sex offender treatment, and weekly visitations. Appellant completed the diagnostic test quickly as required and

10.

was not permitted to take part in the sex offender treatment course because he was found not guilty of the charges against him and he has not admitted to the allegations against him.

{¶ 32} However, appellant was very inconsistent in the visitations with his children. He would fail to appear, arrive late, or leave early from these visitations. For example, appellant left early to play on his phone after only one-half hour with his children. When appellant was struggling to make his visitations, LCCS caseworkers reached out to appellant in order to set up another time for him to visit with his children. He declined their attempts to alter the schedule.

{¶ 33} Appellant's argument rests on whether the agency could have done more after the dual diagnostic was completed and both parents were found not guilty. However, this court's mandate is to review the agency's actions for their reasonableness rather than if the agency could have provided more services to appellant. The agency assigned caseworkers who communicated with appellant, provided several case plans and attempted to work with appellant to reunite his family. Caseworkers testified that they attempted to work with appellant about the visitation schedule, but he was uncooperative during the entire process. A case plan was formulated, and although additional services were not recommended, the agency continued to work with appellant and observe Am.H. and Al.H. to determine what was in their best interests. Here, the trial court found that LCCS had made reasonable efforts to reunite the family. We must agree. Although in

11.

theory, additional services could have been required by the agency, their efforts in the context of this case were reasonable.

{¶ 34} Further, the trial court found the agency's caseworkers more credible than appellant. We are to defer to the trial court's determinations of credibility on appeal. The trial court did not find appellant's explanations for his lack of visitation to be availing over the caseworker's concerns.

{¶ 35} As such, appellant's first assignment of error is not well-taken.

**Best Interests**

{¶ 36} In addressing appellant's second assignment of error, R.C. 2151.353(A)(3) permits a trial court to award legal custody of any child to any person who files a motion seeking legal custody. In order to grant legal custody of a dependent child to a nonparent, the trial court must find, by a preponderance of the evidence that legal custody is in the child's best interest. *In re Christopher M.*, 6th Dist. Lucas No. L-06-1063, 2007-Ohio-1040, ¶ 12, citing *In re A.W.-G.*, 12th Dist. Butler No. CA2003-04-099, 2004-Ohio-2298, ¶ 7.

{¶ 37} The focus of the hearing is to determine what is in the best interest of the child. *In re C.B.*, 5th Dist. Ashland Nos. 18-COA-022, 18-COA-023, 18-COA-024, 2018-Ohio-5303, ¶ 32, citing *In re C.R.*, 108 Ohio St.3d 369, 2006-Ohio-1191, 843 N.E.2d 1188. "Despite the differences between a disposition of permanent custody and legal custody, some Ohio courts have recognized 'the statutory best interest test designed for the permanent custody situation may provide some "guidance" for trial courts making

12.

legal custody decisions.'" *Id.*, quoting *In re A.F.*, 9th Dist. Summit, No. 24317, 2009-Ohio-333, ¶ 7.

{¶ 38} R.C. 3109.04(F)(1) provides that the trial court shall consider all relevant factors when making custody determinations including the wishes of the child; the child's interactions and relationships with their parents, siblings, and any other person who may significantly affect the child's best interest; the child's adjustment to the child's home, school, and community; the mental or physical health of those involved; and whether the parent is likely to honor and facilitate parenting time rights or visitation. *See also Terry J. v. Tyrone F.*, 6th Dist. Lucas No. L-05-1175, 2006-Ohio-3045, ¶ 17-23.

{¶ 39} The trial court found that by a preponderance of the evidence awarding legal custody to N.W.'s cousins was in the best interest of Am.H. and Al.H. The trial court found that Am.H. and Al.H. were adjusting and connecting well with their foster parents at the time. Stoner and other LCCS staff testified that the children were doing well in their placement and that the home was more than suitable for both children. At the time, neither child was able to determine where they would like to be placed due to their young ages. The court also found that N.W.'s cousins were likely to facilitate visitations with the children as they had been helpful in that regard during the entire proceeding below.

{¶ 40} Further, as noted, appellant was inconsistent in his visitations and did not assist the agency in finding a time that would permit him to visit with his children on a more regular basis. He arrived late and left visitations early on several occasions

13.

according to LCCS staff. Appellant also failed to cooperate and facilitate the agency in its effort to reunite the family as he was not forthcoming with even basic information such as where he was working. There was further evidence that appellant admitted to selling prescription medication illegally. The trial court did not err in finding there was a preponderance of the evidence that it was in the best interest of Am.H. and Al.H. to be placed with N.W.'s cousins. Appellant's second assignment of error is found not well-taken.

{¶ 41} For the foregoing reasons, the judgment of the Lucas County Court of Common Pleas, Juvenile Division, is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Arlene Singer, J.

Christine E. Mayle, P.J.

Gene A. Zmuda, J.
CONCUR.

_____
JUDGE

_____
JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.