[Cite as *In re R.M.*, 2019-Ohio-5251.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## HARRISON COUNTY

IN THE MATTER OF:

R.M.,

A NEGLECTED AND DEPENDENT CHILD.

---

**OPINION AND JUDGMENT ENTRY**
Case No. 19 HA 0007

---

Juvenile Appeal from the
Court of Common Pleas, Juvenile Division
of Harrison County, Ohio
Case No. 20173017

**BEFORE:**
Carol Ann Robb, Cheryl L. Waite, David A. D'Apolito, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. David S. Trouten Jr.,* Asst. Public Defender, P.O. Box 572 St. Clairsville, Ohio
43950, for Appellant and

*Atty. T. Owen Beetham,* Prosecuting Attorney, *Atty. Lauren Knight,* Assistant Prosecuting Attorney, 111 W. Warren Street, PO Box 248, Cadiz, Ohio 43907 for Appellee.

Dated :December 11, 2019

---

**Robb, J.**

{¶1}   Appellant S.D. (Mother) appeals the decision of Harrison County Common Pleas Court, Juvenile Division, granting permanent custody of her biological child, R.M., to Harrison County Department of Job and Family Services (the Agency).  Four issues are raised in this appeal.  First, Mother argues the trial court's decision granting permanent custody to the Agency was against the manifest weight of the evidence.  Next, she argues, the Agency failed to prove that there were reasonable efforts at reunification.  Third, she contends she was denied effective assistance of counsel.  Lastly, Mother asserts the trial court did not remain a neutral fact finder during the proceedings.

{¶2}   For the reasons expressed below, Mother's arguments are meritless.  The juvenile court's grant of permanent custody to the Agency is affirmed.

## Statement of Case

{¶3}   R.M. was born May 18, 2016.  She lived with Mother and the maternal grandma for almost the first year of her life.  During that time period, there were allegations Mother abused grandma.  Eventually grandma admitted Mother abused her, and Mother was arrested and charged with domestic violence on May 10, 2017.

{¶4}   That same day, the child was removed from the home and the state filed a complaint for Neglect, Abuse, and Dependency with a request for a Shelter Care Hearing.  The complaint indicated that the agency received a report in September 2016 stating Mother was smoking marijuana and leaving R.M. for long periods of time with grandma.  Grandma was disabled, wheelchair bound, and alleged to be physically incapable of caring for R.M; grandma only had use of one arm due to multiple strokes.  A case plan was created for Mother to become clean, obtain counseling, and arrange appropriate child care while at work.  However, in October 2016, the Agency received another report that the child was being left with grandma while Mother went out to smoke marijuana.  It was at this time that reports were also being received that Mother was hitting grandma.

Case No. 19 HA 0007

**{¶5}** At the Shelter Care Hearing, Mother and Father, J.B., stipulated to R.M. being placed into shelter care.

**{¶6}** The initial hearing was held on May 16, 2017. Mother was appointed counsel. At the initial hearing, it was determined that it was in the best interest of the child to remain in the temporary custody of the agency. The adjudication was set for May 30, 2017.

**{¶7}** Prior to the adjudication, hair follicle testing on Mother tested positive for cocaine, indicating Mother had been using cocaine for a long period of time. 5/24/17 Comprehensive Assessment Planning Model.

**{¶8}** At the Adjudication Hearing, the abuse allegation was dismissed. Mother and Father stipulated that R.M. was neglected and dependent. 5/31/17 J.E. The case proceeded immediately to disposition. 5/31/17 J.E.

**{¶9}** A case plan was filed with the court on June 1, 2017. The plan included both Mother and Father. Father's plan required to him obtain his GED, get a job, secure housing, attend parenting classes, attend visits with R.M., attend drug counseling, submit to random drug screens, and attend anger control management counseling sessions. Mother's plan required her to see a doctor for her anxiety, attend drug counseling, obtain her GED, attend parenting classes, secure her own housing, and attend visits with R.M. The ultimate goal of the case plans was for reunification.

**{¶10}** The case plan was amended in January 2018 to remove Father from the plan. 1/25/18 Amended Case Plan. Father had not visited R.M. for six consecutive weeks and the only part of the case plan he completed was obtaining a job. 1/25/18 Amended Case Plan.

**{¶11}** The Agency requested an annual review in May 2018 and a six-month extension to allow Mother time to progress on the case plan. 5/7/18 Motion. Prior to the annual review, a progress report was filed with the court. 5/9/18 Progress Report. This report indicated that after testing negative on all drug screens administered after June 2017, Mother tested positive for amphetamine and methamphetamine use. The report also indicated Mother had missed parenting meetings, had not done the required drug and alcohol assessment, and had missed 3 visits with the child in a month and a half.

**{¶12}** The case plan was again filed with the court on May 14, 2018.

Case No. 19 HA 0007

{¶13} Following the annual review, the juvenile court extended the matter for six months and ordered the Agency's grant of temporary custody continued. 5/24/18 J.E.

{¶14} In October 2018, the Agency asked for a review and another six-month extension. 10/3/18 Motion. Prior to the hearing, another progress report was filed with the juvenile court. 10/17/18 Progress Report. This report indicated that on August 17, 2018, Mother tested positive for amphetamines and methamphetamines. At that point she was three to four months pregnant. The report indicated she was attending individual and drug counseling, she had attended parent group meetings, was allowed to have home visits with R.M. for one hour supervised and one hour unsupervised, she attended GED classes and passed the Language Arts part of the test, and she got a job. However, the report also noted that she had been seen with people who have substantial criminal records and are known drug users. At the end of the progress report it stated, "The Agency asks that she continue counseling and parenting classes. [Mother] needs to be drug free and through counseling she may learn why she continues to use and how to combat the need for drugs. The agency is requesting a six-month extension."

{¶15} Following the hearing, the trial court granted the six-month extension. 10/22/18 J.E.

{¶16} In January 2019, the Agency moved for the appointment of a Guardian Ad Litem (GAL). The motion was granted. 1/10/19 J.E.

{¶17} Another case plan was filed in January 2019. This plan indicated Mother had given birth to another child at 26 weeks gestation. That child was in the hospital and Mother had not visited the child. That child was placed in the custody of the Agency. That case plan set forth the same requirements the previous case plans had set forth for Mother to be reunified with R.M. 1/15/19 Case Plan.

{¶18} On April 8, 2019, the Agency moved for permanent custody. The motion indicated that R.M. had been in the Agency's custody for 12 of the past 22 months, Father had abandoned the child, and Mother's drug use, failure to attend mental health counseling or drug counseling, and failing to find appropriate housing had prevented reunification. The report of the GAL was filed with the court; and it likewise indicated that permanent custody should be granted to the Agency. 5/2/19 Report.

{¶19} A hearing was held on the motion. Case workers from the Agency and the GAL testified at the hearing. The trial court granted the motion. 5/10/19 J.E. It found that reasonable efforts were made to reunify the family, but Mother and/or Father were unable or unwilling to follow through with the case plan. The trial court found that it was in the best interests of R.M. for her to be placed in the Agency's permanent custody and to sever Mother and Father's parental rights. 5/10/19 J.E.

{¶20} Mother timely appealed. Pursuant to App.R. 11.2(C) this case is expedited.

<u>First Assignment of Error</u>

"The ruling was against the manifest weight of the evidence in general, and particularly as to the state's failure to prove by clear and convincing evidence that permanent custody was in the best interest of the child."

{¶21} Before a juvenile court can terminate parental rights and grant permanent custody of a child to the Agency, the two-prong test set forth in R.C. 2151.414 must be satisfied. First, the juvenile court must find by clear and convincing evidence that one of the following conditions set forth in R.C. 2151.414(B)(1)(a) through (e) exists:

(a) The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period if, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.

(b) The child is abandoned.

(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.

<u>Case No. 19 HA 0007</u>

(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state.

(e) The child or another child in the custody of the parent or parents from whose custody the child has been removed has been adjudicated an abused, neglected, or dependent child on three separate occasions by any court in this state or another state.

R.C. 2151.414(B)(1)

{¶22} Second, the juvenile court must find by clear and convincing evidence that granting permanent custody to the agency is in the best interest of the child. *In the Matter of M.A.*, 7th Dist. Nos. 17 MO 0004 and 17 MO 0005, 2018-Ohio-209, ¶ 21. R.C. 2151.414(D)(1) states that in determining whether permanent custody is in a child's best interest, the court "shall consider all relevant factors," including, but not limited to, the following:

(a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

(b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

(c) The custodial history of the child * * *;

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e) Whether any of the factors in division (E)(7) to (11) of this section apply in relation to the parents and child

**{¶23}** No one factor is to be given greater weight than the others. *In re T.H.,* 8th Dist. Cuyahoga No. 100852, 2014-Ohio-2985, ¶ 23, citing *In re Schaefer,* 111 Ohio St.3d 498, 857 N.E.2d 532, 2006-Ohio-5513, ¶ 56.

**{¶24}** There is no dispute in this case that R.M. had been in the temporary custody of the Agency for more than 12 out of the prior 22 months. R.M. was removed from the Mother's custody when she was almost 1 year old and had been in the continuous custody of the Agency through the permanent custody hearing, which occurred when the child was almost three years old. The child was removed from the home on May 10, 2017; the shelter care hearing was May 11, 2017. The permanent custody hearing occurred on May 6, 2019.

**{¶25}** Mother argues the trial court's determination that it was in the best interest of R.M. to grant permanent custody to the Agency was against the manifest weight of the evidence. Our sister district, the Fourth Appellate District, has concisely explained the standard employed when a parent argues the juvenile court's grant of permanent custody to the Agency is against the manifest weight of the evidence:

> "To determine whether a permanent custody order is against the manifest weight of the evidence, an appellate court must weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving evidentiary conflicts, the trial court clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered." *In re J.M.D.*, 4th Dist. Washington No. 14CA2, 2014-Ohio-1609, ¶ 17. "In reviewing the evidence under this standard, we must defer to the trial court's credibility determinations because of the presumption in favor of the finder of fact." *Id.*
>
> In a permanent custody case, the dispositive issue on appeal is "whether the juvenile court's findings * * * were supported by clear and convincing evidence." *In re K.H.*, 119 Ohio St.3d 538, 2008-Ohio-4825, 895 N.E.2d 809, ¶ 43; *see also* R.C. 2151.414(B)(1). "Clear and convincing evidence" is "that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as

is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. [469], 120 N.E.2d 118 (1954), paragraph three of the syllabus; *State ex rel. Miller v. Ohio State Hwy. Patrol*, 136 Ohio St.3d 350, 2013-Ohio-3720, 995 N.E.2d 1175, ¶ 14. "[I]f the children services agency presented competent and credible evidence upon which the trier of fact reasonably could have formed a firm belief that permanent custody is warranted, then the court's decision is not against the manifest weight of the evidence." *In re R.M.*, 2013-Ohio-3588, 997 N.E.2d 169, ¶ 55 (4th Dist.).

*Matter of J.A.*, 4th Dist. Scioto No. 19CA3878, 2019-Ohio-4116, ¶ 15.

{¶26} It is clear from the trial court's judgment entry that it considered the best interest factors set forth in R.C. 2151.414(D)(1). It provided the following reasoning:

Pursuant to 2151.414(D)(1)(a) and (b) Revised Code, the child is almost three years old. The GAL, in his report, stated that the child is very bonded with the foster parents and refers to them as "Mom and Dad". She has resided with the foster parents since she was almost one year old. Pursuant to the GAL report, the foster family wishes to adopt her if that becomes a possibility.

The GAL testified that [Mother] and the youth are bonded and the visit he observed was appropriate and loving. [Mother] loves the child and wants her home. Her visitation with the child was the only consistent item of the case plan goals that she accomplished.

* * *

Most recently, [Mother] attended a mental health counseling assessment on January 3, 2019 to begin counseling and scheduled two months of appointments. She did not attend any of them. Prior to that, she only attended seven session in all of 2018.

A drug and alcohol counselor testified [Mother] has only completed three sessions from December 19, 2018 through today.  [Mother] tested positive for methamphetamine at one of those session.

A DJFS worker testified that [Mother] has tested positive for methamphetamine and/or marijuana eleven times since December 11, 2018.

The GAL testified that [Mother] is currently staying in a home not suitable for children and stays only at the discretion of the homeowner.

In conclusion, [Mother] does not have stable housing, is not employed, does not have a driver's license, is not taking her prescribed medications, has not completed her GED, has not completed her mental health counseling, has not completed her drug and alcohol counseling, has tested positive numerous times through the case for illegal drug use, and has at times admitted to using methamphetamines and marijuana.

* * *

Pursuant to R.C. 2151.414(E)(1) and (2), the child cannot be placed with her parents within a reasonable amount of time due to the parents' behaviors of abandonment and chemical dependency.

In this matter, neither parent has completed the case plan nor substantially remedied the conditions causing the child to be placed outside the child's home.  [Father] gave up on his child over a year ago and was therefore removed from the case plan.

The Agency has provided a case plan and offered many services to [Mother] in an attempt for them to complete their case plan.  However, due to [Mother's] mental instability, issues with substance abuse, and total lack of progress on any substantial portion of the case plan, she cannot timely be reunified with the child.

Case No. 19 HA 0007

Pursuant to 2151.414(E) Revised Code, the Court FINDS by clear and convincing evidence that the Agency has used reasonable efforts to reunite this family, but the actions of [Father] and [Mother] have prevented a successful reunification.

5/10/19 J.E.

**{¶27}** Those statements and findings are supported by the record. Mother's case plan required her to attend drug and alcohol counseling, parenting classes, obtain her GED, regularly visit the child, and find a stable living place for her and the child. The GAL's testimony confirmed that the child is bonded with the foster parents and Mother. However, the GAL and an agency worker indicated that regular visitation was the only consistent item from the case plan Mother accomplished. Tr. 46. A drug and alcohol counselor testified Mother had only completed three sessions from December 19, 2018 through the date of the permanent custody hearing. Tr. 22. A therapist from Crossroads Counseling stated Mother was referred to her in December 2018, but she had only seen her three times, the last being January 10, 2019. Tr. 26. During one session, Mother tested positive for amphetamines. Tr. 26-27. An employee from the DJFS testified that Mother made no progress with drug and alcohol counseling; she had not attended counseling since January 2019. Tr. 43. This worker also indicated that Mother testified positive for methamphetamine, amphetamines, and THC; there were eleven positive tests for methamphetamine and/or marijuana since December 11, 2018. Tr. 44, 52, 55-56. This worker testified Mother admitted to using methamphetamine. Tr. 45. This worker also testified that Mother is not in compliance with the parenting or mental health counseling components of the case plan. Tr. 53.

**{¶28}** The GAL testified Mother acknowledged to him that she had not completed any of the provisions of the case plan, including the drug and alcohol portion. Tr. 8-9. As to her living arrangement, the GAL indicated she was living with a lady named Linda Beach. Tr. 9. He explained, "I'll also say I'm familiar with Linda Beach. I'm not going to disparage someone's who's not here but I probably would not have approved a placement at that residence." Tr. 9. The GAL further indicated that Mother only stays at this home at the discretion of the renter; Mother's name is not on the lease. Tr. 9-10. He then stated that his report indicated reunification could not be done in a reasonable time:

Case No. 19 HA 0007

Let's say in layman's terms it's my opinion that basically the father has abandoned any attempts to try to receive custody of the child and he's clearly exhibited a lack of support. I don't think he's visited with the child in over a year.

As far as your client, [Mother], which I think I – she's currently unemployed. She doesn't have a valid driver's license which I think she was – I think she had a valid driver's license when the case plan started. It's been subsequent to this whole case that she's lost her driver's license and then just – we're less than a month out from this hearing even after the agency had filed the motion and she's testing  -- your client's testing positive for methamphetamines. So I would say she clearly has a drug and alcohol problem that would basically prevent reunification within even a reasonable period of time.

Tr. 10-11.

{¶29} Despite the overwhelming evidence that Mother has a drug problem and has not completed any portion of her case plan, she contends she still needs more time because the reasons for drug use and failure to complete the plan was her mother's cancer diagnosis and death, and the Agency's failure to give her more visitation and eventually custody of R.M. As the state points out, Mother's argument is essentially that she was justified in using methamphetamines because grandma was dying and the Agency had not returned custody of R.M. The record indicates that positive drug test results occurred both before and after grandma was diagnosed and died. Thus, even if the diagnosis could be an excuse why Mother started using drugs, the record does not suggest that the diagnosis started the drug use or was the reason for the drug use. Furthermore, as to more visitation and custody of R.M., Mother knew what was required for the case plan, but was not completing it or rectifying the issues the case plan sought to address.

{¶30} Considering all the testimony and evidence in the record, we cannot conclude the juvenile court's finding that granting permanent custody to the Agency was

Case No. 19 HA 0007

in the child's best interest and was against the manifest weight of the evidence. This assignment of error is meritless.

Second Assignment of Error

"The state failed to prove that reasonable efforts at reunification were followed prior to moving for permanent custody."

**{¶31}** This assignment of error addresses reasonable efforts at reunification. Mother contends there were no reasonable efforts at reunification. She asserts that while the case plan called for drug counseling and psychological treatment, there was no evidence that any was provided. The Agency counters asserting there was evidence that counseling was provided, and evidence Mother did not attend counseling.

**{¶32}** The Ohio Supreme Court has stated, "[E]xcept for a few narrowly defined exceptions, the state must have made reasonable efforts to reunify the family prior to the termination of parental rights." *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816, ¶ 21. The Ninth Appellate District has explained:

> R.C. 2151.413(D)(3)(b) expressly prohibits the agency from moving for permanent custody on the basis that a child has been in the agency's temporary custody for 12 of 22 months if, when required to do so, the agency "has not provided the services required by the case plan to the parents of the child or the child to ensure the safe return of the child to the child's home." Accordingly, inherent in an agency's "12 of 22" allegation is that it has engaged in reasonable efforts towards reunification. Unless the agency has been relieved of its statutory obligation to use reasonable efforts to facilitate reunification, it must demonstrate such efforts at the permanent custody hearing, if it has not established that it made reasonable efforts prior to the hearing on the motion. *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, ¶ 43.

*In re: H.S., Z.M., I.M., P.S.*, 9th Dist. Summit No. 29401, 2019-Ohio-4334, ¶ 17.

**{¶33}** R.C. 2151.419(A)(1) provides:

> [A]t any hearing * * * at which the court removes a child from the child's home or continues the removal of a child from the child's home, the court

shall determine whether the public children services agency or the private child placing agency that filed the complaint in the case, removed the child from home, has custody of the child, or will be given custody of the child has made reasonable efforts to prevent the removal of the child from the child's home, to eliminate the continued removal of the child from the child's home, or to make it possible for the child to return safely home.

{¶34} The Sixth Appellate District has stated appellate courts review a trial court's finding that an Agency made reasonable efforts toward reunification under a manifest weight of the evidence standard of review. *In re E.H.*, 6th Dist. Ottawa No. OT-15-044, 2016-Ohio-8170, ¶ 23. "Thus, '[j]udgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence.'" *C.E. Morris Co. v. Foley Contr. Co.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978), paragraph one of the syllabus. "'In a reasonable efforts determination, the issue is not whether the agency could have done more, but whether it did enough to satisfy the reasonableness standard under the statute.'" *In re E.H.* at ¶ 23, quoting *In re S.R.*, 6th Dist. Lucas Nos. L-12-1298 and L-12-1326, 2013-Ohio-2358, ¶ 21. "A 'reasonable effort' is an 'honest, purposeful effort, free of malice and the design to defraud or to seek an unconscionable advantage.'" *Id.*

{¶35} Reasonable efforts for reunification can be shown through the development and facilitation of a case plan by the Agency; the Agency is required to demonstrate that it developed and facilitated a plan to "'account for the respective abilities of the parents and children in pursuing individualized concerns, goals, and steps necessary for reunification.'" *In re Am.H., Al.H.*, 6th Dist. Lucas No. L-19-1025, 2019-Ohio-4374, ¶ 31; *In re: H.S., Z.M., I.M., P.S.*, 2019-Ohio-4334 at ¶ 18. When the parent does not complete the case plan, through no fault of the Agency, the Agency has made reasonable efforts at reunification. *In re Am.H., Al.H.*, 2019-Ohio-4374, ¶ 31-32. For instance, in *In re Am.H, Al.H.*, the case plan called for regular visitation with the children. *Id.* Father was inconsistent with visitation and the Agency reached out to him to set up another time for him to visit with his children. *Id.* at ¶ 32. He declined the Agency's help. *Id.*

{¶36} In the matter at hand, throughout the entire two years the child was in the custody of the Agency, there were case plans in effect, the Agency requested annual

court reviews, and six-month extensions were allowed to permit the parents to make progress on the case plan. Progress reports were filed with the court. The progress report from May 2018 indicated Mother tested positive for amphetamines and methamphetamines, she had missed parenting meetings, and she had only attended 2 of the 9 GED classes. 5/9/18 Progress Report. The October 2018 progress report indicated Mother tested positive for amphetamines and methamphetamines when she was 3-4 months pregnant with her second child. 10/17/18 Progress Report. This report indicated she was going to drug and alcohol counseling, was attending parent group meetings for three months, she had a job, and was attending her GED classes. 10/17/18 Progress Report.

{¶37} However, following that progress report, it appears from the testimony at the permanent custody hearing, Mother stopped attending classes and counseling and continued to test positive for drugs.

{¶38} A clinical therapist from Tri County Help Center in Cadiz testified; this therapist was to provide mental health services. She indicated that in January 2019, at the assessment, Mother had scheduled two months of weekly appointments with her for counseling, but had failed to follow through and did not attend any appointments. Tr. 17. Prior to January 2019, Mother did attend 9 sessions from January 2018 to January 2019. Tr. 22-23. The therapist stated that at the assessment they had talked about getting Mother back on track to seeing a drug and alcohol counselor and a psychiatrist for her anxiety. Tr. 18. As for the drug counseling, an appointment was made with one place, but it was not a good fit, so the therapist suggested a second place that had walk-in services. Tr. 18-19. The therapist did not know if Mother had followed through with the second place for drug counseling.

{¶39} A drug counselor from Crossroads Counseling also testified. Mother was referred to them from dependency court in December 2018. Tr. 26. The counselor saw Mother three times, the last being January 10, 2019. Tr. 26. A drug screen was performed at that session and Mother tested positive for amphetamines. Tr. 26. The counselor testified that Mother cancelled one appointment and did not show up for any other appointment after that cancellation. Tr. 28.

**{¶40}** Three social workers from the Agency also testified. One worker testified that the primary concern in the beginning was Mother's use of marijuana and that her THC levels kept rising. Tr. 35. Mother also was not attending counseling sessions in accordance with the case plan. Tr. 35. The caseworker that began the case in December 2018 testified that Mother's plan objectives at that time were to do mental health and drug and alcohol counseling along with a parent group. Tr. 43. The caseworker indicated that those goals have not changed, but there are different providers now. Tr. 43. This worker was asked if Mother progressed with drug and alcohol counseling and she stated that Mother had not attended any sessions since January 2019. Tr. 43-44. Mother had submitted to drug tests and while there have been some negative results, there were also positives for methamphetamine. Tr. 44. Two weeks prior to the May 6, 2019 hearing, Mother's saliva screen tested positive for methamphetamine, amphetamines, and THC. Tr. 44. In February 2019, her urine screen tested positive for methamphetamine and Mother admitted to use. Tr. 45. There were 11 positive drug screens since December 2018. Tr. 53. The caseworker had discussed with Mother the possibility of going into an in-patient treatment, but Mother declined. Tr. 48. This caseworker also testified that Mother has not had stable housing and the worker tried to do a home visit shortly before the hearing, but no one was at home. Tr. 45. The caseworker also indicated that Mother was not in compliance with the parenting class requirement. Tr. 53.

**{¶41}** The GAL also testified; he stated Mother's drug and alcohol problem prevented reunification within a reasonable time period. Tr. 11. The GAL explained:

Q. And is it fair to say that the time factor itself is a major part of your conclusion or recommendation?

A. Yes. If this was a year ago I might – it's still tough cause I don't know that [Mother] has really exhibited much motivation so to speak at least in the past year. I know initially she did fairly well. But yeah, I mean you're at the two year mark. I think the child's basically been in the agency's custody at this point for two years almost to the day so I don't – there's really –

* * *

She doesn't have employment – [Mother] does not have employment, she does not have housing, she's still testing positive for controlled substances, specially methamphetamines.

* * *

[Mother] has a lot of affection and love for the child and I think it's returned. I mean the child clearly loves the mother. There's a bond. Honestly to me it makes it somewhat difficult for me to understand why [Mother] hasn't taken more steps to try to comply with the case plan.

Q. From your observations as guardian ad litem – no one has a crystal ball. I'm not asking if you have crystal ball but from your experience in dealing with these type of cases both as counsel and as guardian ad litem would you call this an egregious case other than the time line?

A. No. I mean it's seemingly a lack of effort.

Q. You stated if this was a year ago it'd be a different story.

A. Yeah, I would say give her, you know, another year but – or six months, but I mean at this – I can't say that now. I mean at some point you just have to look at this as the track record, we're at two years. I think the law says the Court doesn't really have the option to go past two years and even if they did I probably wouldn't say give her another six months at this point because we're at -- you know the child needs some type of permanency at this point. It's been two years.

Tr. 12-14.

**{¶42}** Considering all the above, there was competent credible evidence the Agency made reasonable efforts at reunification. The failure was on the part of the Mother, not the Agency. This assignment of error lacks merit.

### Third Assignment of Error

"[Mother] was denied effective assistance of counsel."

Case No. 19 HA 0007

**{¶43}** Mother argues she was entitled to effective assistance of counsel and she was denied effective assistance of counsel. She contends her counsel's performance was deficient because counsel did not move to dismiss the case at the end of the Agency's case in chief, failed to put on evidence or permit her to testify, and made a statement before any testimony was introduced, admitted that the 12 of 22 factor had been met.

**{¶44}** Mother is correct that she is entitled to effective assistance of counsel in a permanent custody proceeding. We have explained:

> R.C. 2151.352 provides that parents are guaranteed the right to counsel at all stages of a permanent custody proceeding. This right to counsel includes the right to effective assistance of counsel. In permanent custody proceedings, where parents face losing their children, we apply the same test as the test for ineffective assistance of counsel in criminal cases.

(Internal citations omitted.). *In re D.H.*, 7th Dist. Columbiana No. 16 CO 0010, 2016-Ohio-7933, ¶ 16.

**{¶45}** To prove an allegation of ineffective assistance of counsel, a two prong test must be satisfied. First, appellant must establish that counsel's performance has fallen below an objective standard of reasonable representation. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052 (1984); *State v. Bradley,* 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraph two of the syllabus. Second, appellant must demonstrate she was prejudiced by counsel's performance. *Strickland.* In order to show prejudice, appellant must prove that, but for counsel's errors, the result of the trial would have been different. *Bradley,* at paragraph three of the syllabus. If the performance was not deficient, then there is no need to review for prejudice and vice versa. *State v. Madrigal*, 87 Ohio St.3d 378, 389, 721 N.E.2d 52 (2000).

**{¶46}** Appellant bears the burden of proof on the issue of counsel's effectiveness. *State v. Calhoun,* 86 Ohio St.3d 279, 289, 714 N.E.2d 905 (1999). In Ohio, a licensed attorney is presumed competent. *Id.*

**{¶47}** The first two arguments - counsel failed to move to dismiss the permanent custody motions following the agency's case in chief and the decision to not present

evidence or have Mother testify - are trial strategy issues. *State v. Treesh*, 90 Ohio St.3d 460, 490, 739 N.E.2d 749 (2001) (decision to call a witness is trial strategy and will not be second-guessed by a reviewing court); *State v. Jones*, 6th Dist. Lucas No. L-09-1182, 2010-Ohio-2576, ¶ 20 (Motion to dismiss indictment is trial strategy.). Instances of debatable trial strategy very rarely constitute ineffective assistance of counsel. *State v. Telego*, 2018-Ohio-254, 104 N.E.3d 190, ¶ 30 citing *State v. Thompson*, 33 Ohio St.3d 1, 514 N.E.2d 407 (1987). Trial strategy is only deficient if it is "outside the realm of legitimate trial strategy so as 'to make ordinary counsel scoff.'" *State v. Taylor*, 5th District Richland No. 2005-CA-0112, 2006-Ohio-4064, ¶ 34.

**{¶48}** Given the evidence submitted in this case, there was sufficient evidence to grant permanent custody to the Agency. Therefore, filing a motion to dismiss would not have been effective and the decision to not file a motion to dismiss was legitimate trial strategy. Likewise, the record clearly indicates that Mother contributed to the decision of whether to testify; this was trial strategy. If the motion was granted she was going to appeal and if it was not granted then there was no need to have her testify. Tr. 59-60. Consequently, neither actions/inactions complained of constitute deficient performance or ineffective assistance of counsel.

**{¶49}** As to the indication that counsel admitted to the 12 of 22 factor and prejudiced her case, the statements made in the brief are not a completely accurate account of what transpired at the hearing. At the hearing, the following conversation occurred:

> [Counsel for Mother]: So you understand that they – their primary claim is that the child has been in temporary custody of the agency – Well, may we approach again?
>
> The Court: You may.
>
> [Counsel for Mother]: 12 out of 22?
>
> The Court: Yes. 12 out of 22.
>
> [Counsel for Mother]: And abandonment by the father.

Case No. 19 HA 0007

The Court: And it's May 11, 2017 so almost a full two years. Okay.

Tr. 5.

{¶50} Counsel was not informing the trial court that the 12 of 22 factor was met. Rather, counsel was indicating what the claims were by the Agency. It was the trial court that clearly indicated that the child has been in the custody of the Agency for almost two years. The remainder of the transcript indicates that the Agency was presenting evidence of 12 of 22 and the best interests of the child; the record does not indicate that counsel stipulated that the 12 of 22 factor had been met. Regardless, even if counsel had informed the court that the child had been in the custody of the Agency for 12 of the last 22 consecutive months and stipulated to the 12 of 22 factor, that would have amounted to legitimate trial strategy. The facts of this case undisputedly show that the child was in the custody of the agency for 23 consecutive months, almost 24 consecutive months. For those reasons, counsel's performance was not deficient or amounted to ineffective assistance of counsel.

{¶51} This assignment of error is meritless.

### Fourth Assignment of Error

"The trial court failed to remain a neutral fact finder, but took an active role in prosecuting the case for the state of Ohio."

{¶52} Mother argues the court took an active role in presenting the Agency's case for permanent custody when it asked questions of an Agency's witness. Thus, she asserts, the trial court failed to remain a neutral fact finder.

{¶53} The Agency acknowledges the trial court asked questions, but asserts the questions were not unreasonable, arbitrary, or unconscionable. Furthermore, it contends much of the information that was provided in the answers to these questions was already testified to earlier.

{¶54} The trial court asked additional questions of one witness, an Agency caseworker. These questions began on the bottom of page 52 of the transcript and concluded in the middle of page 53. They were:

The Court: So how many times for drug testing since you've had this case in the last five and for what?

Case No. 19 HA 0007

The Witness:  There have been 11 positive drug screens since December on both urinalysis and salivas for methamphetamines, amphetamines and she's recently been testing positive for THC also.

The Court:  Okay.  You said there was a mental health component.

The Witness:  Yes.

The Court:  Is she in compliance?

The Witness:  No, she is not.

The Court:  You said there was a parenting class component?

The Witness:  Right.

The Court:  Is she in compliance?

The Witness:  No, she is not.

The Court:  Okay.

Tr. 52-53.

**{¶55}** Typically, an appellate court reviewing a trial court's interrogation of witnesses and comments must determine whether the trial court abused its discretion. *State v. Swint*, 5th Dist. Stark No. 2018CA00057, 2018-Ohio-5384, ¶ 24, citing *State v. Davis*, 79 Ohio App.3d 450, 454, 607 N.E.2d 543 (4th Dist.1992).  However, a party challenging the court's questioning of a witness must object, otherwise, appellate review is limited to plain error.  *Holt v. Feron*, 3d Dist. Marion No. 9-17-43, 2018-Ohio-3318, ¶ 19.

**{¶56}**  A trial court is presumed to act impartially in its questioning of a witness.  *In re Disqualification of Solovan*, 100 St.3d 1214, 2003-Ohio-5484, 798 N.E.2d 3, ¶ 6.  A trial court's questions to a witness should be limited to evidentiary issues or clarification of answers:

A trial court is obligated to control the proceedings before it, to clarify ambiguities, and to take steps to ensure substantial justice.  *  *  *

Case No. 19 HA 0007

Accordingly, a trial court should not hesitate to pose pertinent and even-handed questions to witnesses. * * * Further, a trial court enjoys even greater freedom in questioning witnesses during a bench trial because the court cannot prejudicially influence a jury with its questions or demeanor. * * *

(Internal citations omitted.). *Yurkowski v. Univ. of Cincinnati*, 2013-Ohio-242, 989 N.E.2d 1051, ¶ 61 (10th Dist).

**{¶57}** Under a plain error standard of review, or even under an abuse of discretion standard of review, there is no error in this instance. The information gathered from the witness by the trial court was merely a reiteration of previous testimony or was in a more concise form to what was needed for a determination of whether the motion should be granted.

**{¶58}** The witness the trial court questioned had previously testified that the Mother was testing positive for drugs in urine and saliva drug tests. Tr. 44. Another witness also testified that the Mother had tested positive recently for drugs multiple times and those were for methamphetamines and amphetamines. Tr. 26. The trial court's question revealed that it was 11 positive drug tests.

**{¶59}** As to mental health, a therapist from Tri County Help Center testified the Mother had not seen her since January 2019 despite having scheduled sessions. Tr. 17. This was an indication that the Mother was not complying with her case plan for mental health counseling.

**{¶60}** The only new specific information was on parenting classes. However, when the caseworker was discussing Mother's case plan, the worker noted that parenting classes were a part of it. Tr. 43. Although she was not asked specifically about the parenting classes by the Agency's attorney, she was asked if Mother made progress on any part of her case plan objectives. Tr. 46. The caseworker indicated Mother had not; the only thing Mother complied with was regular visitation. Tr. 46.

**{¶61}** Considering all the above and the manner the questions were asked, the trial court was impartial and did not overstep its role by asking the questions it did. This assignment of error is meritless; the trial court did not commit plain error, or even abuse its discretion, in questioning the witness in the manner it did.

## Conclusion

**{¶62}** All four assignments of error lack merit.  The trial court's grant of permanent custody to the Agency is affirmed.

Waite, P.J., concurs.

D'Apolito, J., concurs.

———————————————

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas, Juvenile Division of Harrison County, Ohio, is affirmed. Costs waived.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**